# EXHIBIT A

Case 2:19-cv-01004-NR Document 1-2 Filed 03/13/19 Page 2 of 14

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PRESTINE BUSH | ) |
| | ) |
|      Plaintiff, | ) |
| | ) |
|      v. | ) |
| | ) |
| COMCAST CABLE | ) |
| COMMUNICATIONS MANAGEMENT, LLC | )    Civil Action No. |
| | ) |
| COMCAST CABLE | ) |
| COMMUNICATIONS, LLC | ) |
| | ) |
| COMCAST CORPORATION | ) |
| | ) |
|      Defendants. | ) |

## COMPLAINT

Plaintiff Prestine Bush files this Complaint against her former employers,

Defendants Comcast Cable Communications Management, LLC; Comcast Cable

Communications, LLC; and Comcast Corporation (collectively "Comcast"), seeking

damages for the discrimination and hostile work environment she was subjected to at

work and the unlawful termination of her employment by Comcast.

## THE PARTIES

1.     Prestine Bush is an adult individual who resides at 118 Tecumseh Street,

Pittsburgh, Pennsylvania 15207.

2.     Comcast Cable Communications Management, LLC is a limited liability

company organized under Delaware law and registered to do business in the

Commonwealth of Pennsylvania.  The headquarters for Comcast Cable

Communications Management, LLC are located at One Comcast Center, 1701 John F.

Kennedy Boulevard, Philadelphia, Pennsylvania 19103.  Upon information and belief,

Comcast Cable Communications Management, LLC is a wholly-owned subsidiary of Comcast Corporation and operates under Comcast Cable Communications, LLC.

3.  Comcast Cable Communications, LLC is a limited liability company organized under Delaware law and registered to do business in the Commonwealth of Pennsylvania.  The headquarters for Comcast Cable Communications, LLC are located at One Comcast Center, 1701 John F. Kennedy Boulevard, Philadelphia, Pennsylvania 19103.  Upon information and belief, Comcast Cable Communications, LLC is a wholly-owned subsidiary of Comcast Corporation.

4.  Comcast Corporation is a corporation organized under Pennsylvania law with headquarters located at One Comcast Center, 1701 John F. Kennedy Boulevard, Philadelphia, Pennsylvania 19103.

5.  At all relevant times, Comcast continuously employed more than 15 employees and was a covered employer as defined by the Americans with Disabilities Act ("ADA" – 42 U.S.C. §§ 12101 *et seq.*), Title VII of the Civil Rights Act of 1964 ("Title VII" – 42 U.S.C. §§ 2000e *et seq.*), and the Pennsylvania Human Relations Act ("PHRA" – 43 P.S. §§ 951 *et seq.*).

JURISDICTION AND VENUE

6.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that Bush's claims arise under the laws of the United States and Bush seeks redress for violations of federal laws.  The Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367, because such claims are so closely related to Bush's federal claims that they form part of the same case or controversy.

7.      The Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) in that it is between citizens of different states, and the amount in controversy exceeds the sum of $75,000.00.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) and (b)(2) as a substantial part of the events or omissions giving rise to Bush's claims occurred at a Comcast place of business located at 300 Corliss Street, Pittsburgh, Pennsylvania 15220.

<u>FACTUAL BACKGROUND</u>

A.      <u>The Wayward Work Culture at Comcast</u>

9.      From the time Bush began working at Comcast as a customer service representative on January 31, 2017, she was subjected to a gossipy and unruly work culture.

10.     In April 2017, rumors began to spread that Bush was in a relationship with Imani Bowen, another customer service representative.

11.     As a result, Bush was constantly subjected to questions and inappropriate comments from her coworkers.

12.     Despite pushback from Bush, the rumors concerning she and Bowen persisted and even led one of her supervisors to ask Bush personal questions about Bowen.  Bush informed this supervisor that this line of questioning was unprofessional and inappropriate.

13.     Bush was advised to report her issues about these rumors to her manager, Amy Ligouri.

14.     When Bush spoke with Ligouri about these rumors in May 2017, Bush was told that the rumors were an outside matter and that nothing could be done.  As a result, Bush continued to be subjected to inappropriate comments and questions from her coworkers.

15.     Bowen, a man, was not subjected to the same type of questions and inappropriate comments from coworkers that Bush was.

16.     The questions and inappropriate comments that Bush was subjected to were harassing, bothersome, and interfered with Bush's ability to work.

B.     <u>The Assault</u>

17.     Bush was assaulted in her home by Bowen on August 22, 2017 ("the Assault").

18.     Bowen was subsequently arrested, jailed, and charged criminally with the following on August 23, 2017:

a.     One count of rape by forcible compulsion (felony of the first degree);

b.     One count of involuntary deviate sexual intercourse (felony of the first degree);

c.     One count of burglary (felony of the first degree);

d.     One count of sexual assault (felony of the second degree);

e.     One count of indecent assault by forcible compulsion (misdemeanor of the first degree);

f.     One count of simple assault (misdemeanor of the second degree); and

g.     One count of resisting arrest (misdemeanor of the second degree).

4

19.     On October 3, 2017, Bowen had a preliminary hearing and all his criminal charges were held for trial.

20.     Bowen remained in jail pending the scheduling of his trial date.

21.     However, on April 23, 2018, Bowen pled guilty to one count of sexual assault (felony of the second degree).

22.     Bowen was sentenced to serve additional time in prison, to be followed by a 5-year term of probation.  In addition, Bowen was required to follow all the conditions of Sex Offender Court, which included lifetime registration as a sex offender under the Sex Offender Registration and Notification Act.

C.     Comcast's Failure to Control the Atmosphere at Work
       Following Bowen's Arrest for Felony Sexual Assault

23.     Bush called Liguori and told her about the Assault on August 25, 2017.

24.     On August 27, 2017, Bush dropped off documents and other information which pertained to the Assault to Liguori so that she could take a few days off.

25.     When Bush returned to work, she was immediately subjected to harassing and inappropriate behavior at work.  For example,

    a.     Bush was approached by multiple coworkers and told that Kimberly Johnston pulled Bowen's criminal charges at work and openly talked about the merits of Bush's allegations against Bowen;

    b.     Laure Dietz offered to show Bush sexually explicit text messages that Bowen had sent another coworker;

    c.     Dietz informed Bush, without prompting, that Bowen had acted inappropriately with another coworker at work;

    d.     Dietz also informed Bush that Johnston was inquiring about the status of Bush's relationship with Bowen at work with their coworkers; and

     e.     Johnston approached Bush under the guise of a work issue but proceeded to question the validity of Bush's claims against Bowen, stating that "she couldn't believe" Bowen was capable of doing such things.

26.     As a survivor of sexual assault, Bush was dealing with post-traumatic stress disorder ("PTSD"), anxiety, and depression.

27.     The harassment Bush endured at work triggered her PTSD; exacerbated her PTSD, anxiety, and depression; and, as a result, directly interfered with her ability to perform her job duties.

D.     <u>Breakdown of Comcast's Internal Processes and Procedures</u>

28.     Bush spoke with Liguori on September 12, 2017 and requested that Liguori directly address the harassment Bush had been enduring from her coworkers. Liguori denied Bush's request and stated that there was nothing she could do as it was an outside matter.

29.     As the harassment continued, Bush continued to request reasonable accommodations from Liguori, as well as from David Storey, a Comcast Human Resources Manager. Each of Bush's requests, however, were denied as Liguori and/or Storey continued to label the harassment an outside matter.

30.     As a result of Comcast's failure to properly curb this harassment, Bush was forced to take leave under the Family and Medical Leave Act to manage the exacerbated conditions of her PTSD, anxiety, and depression.

31.     Bush subsequently submitted a reasonable accommodation request for her PTSD, anxiety, and depression through Comcast's benefit provider, Sedgwick.

32.     Sedgwick determined that there was a medical basis for Bush's reasonable accommodation request and initially advised Comcast to provide Bush with

additional time off while she managed the exacerbated conditions of her PTSD, anxiety, and depression; conditions which could become debilitating when Bush was harassed by her coworkers.

33.     When Bush returned to work on March 20, 2018, she was immediately subjected to the same type of harassment and inappropriate behavior she had previously dealt with.

34.     On March 20, 2018, Bush went to the cafeteria and was openly asked about the status of Bowen's criminal case by a coworker; subjected to stares and menacing glares from Dietz and Sidney Bagley; and literally dragged out of the cafeteria by Michael Joyner when she told her coworkers to stop harassing her.  The entire incident triggered Bush's PTSD, anxiety, and depression.

35.     When Bush spoke to Liguori about the cafeteria incident, Bush was sent home and none of her coworkers were disciplined.

36.     The next day, on March 21, 2018, Ligouri warned Bush that she could not be the cause of any additional conflict at work.  Ligouri informs Bush that if she tells Sidney, Johnston, or any other coworker that they are harassing her, Ligouri would consider that a form of harassment against those coworkers.

37.     When Bush describes to Liguori how her coworkers' harassment has affected her life; her PTSD, anxiety, and depression; and her ability to work, Ligouri sarcastically asks Bush if she'd like her to send out an email to everyone, asking them to stop this harassment.  When Bush says yes, she'd like Ligouri to send out that email, Ligouri declines.

38.     Ligouri later informs Bush that these issues are a result of her own actions.  Ligouri states that Bush simply has a chip on her shoulder and that having Comcast intervene would be pointless.

39.     On March 21, 2018, Bush informs Ligouri that if Comcast continues to refuse to act, she would be forced to reach out to the Equal Employment Opportunity Commission ("EEOC").  Ligouri responds that the EEOC would have nothing to do with these issues.

        E.      Retaliatory Conduct by Comcast

40.     Two days after Bush threatened to speak with the EEOC, items were stolen from Bush's desk.  After Bush reports this incident, Comcast fails to take any action.

41.     Bush submits another reasonable accommodation request to deal with the continued harassment at work.  While modifications to Bush's schedule are approved, Comcast fails to take any additional action to address the actual harassment Bush is subjected to at work.

42.      Bush continues to request reasonable accommodations to deal with the continued harassment.  Each request, however, continues to be denied.

43.      On April 23, 2018, Bush files an inquiry with the EEOC, requesting assistance to deal with the continued harassment she faces at work.

44.     On May 8, 2018, Ligouri informs Bush that any future requests for reasonable accommodation will have to go through Kristen Bell, Comcast's Regional Senior Director of Human Resources.  Bush subsequently files another reasonable

accommodation request with Comcast, seeking help to address the harassment she continued to endure at work on a near-daily basis.

45.     On May 9, 2018, Bush was informed by a coworker that her job status had been termed a "possible termination" by Comcast on documents located within Michael Schetka's office.

46.     On May 15, 2018, Bush speaks with Storey, Bell, and Comcast Vice President Gregory Magee.  During this conversation, Bush is told that Comcast has investigated her claims and concluded that her claims have no merit and that Comcast will be taking no action to address any of the issues Bush has raised.

47.     Soon after, Bush's coworkers resume their harassment of Bush, which forces her to leave work on June 9, 2018.

48.     On June 15, 2018, Sedgwick certifies another request for a reasonable accommodation by Bush.  In this request, Sedgwick confirms that the past behavior of Johnston, Dietz, and Joyner are triggering Bush's PTSD and anxiety and that such behavior should be avoided.  In response, Comcast places Bush on unpaid leave.

49.     Comcast never directly addresses the harassment that Bush endured at work.  Instead, Comcast marginalized Bush's claims as a female sexual assault survivor; ignored Bush's pleas for help in dealing with the exacerbation of her PTSD, anxiety and depression at work; failed to remove Bush from a hostile work environment; and accused Bush of harassing her coworkers.

50.     On November 7, 2018, Comcast notifies Bush by letter that her employment with the company will officially end on November 14, 2018.

51.     At all relevant times, Comcast acted by and through their authorized officers, employees, directors, agents, and representatives acting within the course and scope of their employment and/or duties with Comcast and in furtherance of Comcast's business.

52.     At all relevant times, Comcast acted as employers of Bush within the meaning of the statutes that form the basis of this matter.

53.     At all relevant times, Bush was an employee of Comcast within meaning of the statutes that form the basis of this matter.

F.      <u>Bush's Exhaustion of her Administrative Remedies</u>

54.     On July 31, 2018, Bush filed a Charge of Discrimination against Comcast with the EEOC *pro se*, alleging discriminatory conduct and retaliation by Comcast.

55.     Bush's Charge was dual-filed with the Pennsylvania Human Relations Commission ("PHRC").

56.     By letter dated May 14, 2019, the EEOC sent Bush notification of her right to file a civil action against Comcast.

57.     Bush has initiated this civil action within 90 days of receiving the EEOC's Right to Sue letter.

58.     In accordance with 43 P.S. § 962(c)(2) of the Pennsylvania Human Relations Act, Bush is contemporaneously serving a copy of this Complaint on the PHRC.

59.     Bush has exhausted her administrative remedies under federal and Pennsylvania law.

Case 2:19-cv-01004-NRR Document 1 Filed 03/13/19 Page 12 of 14

## STATEMENT OF CLAIMS

### Count One
Violation of the Americans with Disabilities Act
(Bush v. Comcast)

60.     Bush incorporates by reference the allegations in Paragraphs 1 through 59, as if fully set forth herein.

61.     At all relevant times, Bush had a "disability" that substantially limited one or more major life activities and/or had a record of a "disability" and/or was regarded as "disabled" by Comcast, as defined by and within the meaning of the statutes which form the basis of this action.

62.     At all relevant times, Bush was qualified to perform the essential functions of her job, with or without a reasonable accommodation.

63.     Comcast fired Bush because of her known disabilities; her perceived disabilities; and/or due to her record of such impairments.

64.     Bush made clear to Comcast that the harassment and behavior of her coworkers triggered her PTSD; exacerbated her PTSD, anxiety, and depression; and, as a result, directly interfered with her ability to perform her job duties.

65.     Comcast, however, refused to address the ongoing harassment Bush was subjected to.  Instead, Comcast played favorites while minimizing the legitimacy of Bush's claims; ignoring Bush's pleas for helps; failing to provide Bush with a safe working environment; and accusing her of harassing her coworkers.

66.     The acts and omissions by Comcast that are described in this Complaint constitute unlawful discrimination, failure to accommodate, a hostile work environment, and retaliation under the ADA.

67.     As a direct and proximate result of Comcast's conduct, Bush has or will suffer substantial harm, for which Bush seeks general, compensatory, consequential, and punitive damages.

<div align="center">

Count Two
Violation of Title VII of the Civil Rights Act of 1964
(Bush v. Comcast)

</div>

68.     Bush incorporates by reference the allegations in Paragraphs 1 through 67, as if fully set forth herein.

69.     The acts and omissions by Comcast that are described in this Complaint constitute unlawful discrimination, a hostile work environment, and retaliation under Title VII.

70.     Comcast acted willfully and intentionally, and with malice and/or reckless indifference to Bush's protected rights.

71.     As a direct and proximate result of Comcast's conduct, Bush has or will suffer substantial harm, for which Bush seeks general, compensatory, consequential, and punitive damages.

<div align="center">

Count Three
Violation of the Pennsylvania Human Relations Act
(Bush v. Comcast)

</div>

72.     Bush incorporates by reference the allegations in Paragraphs 1 through 71, as if fully set forth herein.

73.     The acts and omissions by Comcast that are described in this Complaint also violate the PHRA, which prohibits retaliation and discrimination on the basis of disability and gender.

74.     The acts and omissions by Comcast that are described in this Complaint have caused Bush to suffer extreme mental anguish, emotional distress, and loss of income.

75.     As a direct and proximate result of Comcast's conduct, Bush has or will suffer substantial harm, for which Bush seeks general, compensatory, and consequential damages.

<u>Requests for Relief</u>

Accordingly, Bush requests that this Court enter judgment on her behalf and enter an order directing the award of other relief, as follows:

A.     Finding that Comcast violated the ADA;

B.     Finding that Comcast violated Title VII;

C.     Finding that Comcast violated the PHRA;

D.     Awarding Bush back pay, front pay, lost benefits, and other emoluments of employment and such other relief as is necessary to make her whole;

E.     Awarding Bush compensatory damages for pain, humiliation, emotional distress, and damage to reputation;

F.     Awarding Bush punitive damages under the ADA and Title VII;

G.     Awarding Bush attorneys' fees and costs;

H.     Awarding Bush pre- and post-judgment interest as provided by law; and

I.     Awarding Bush any other relief to which she is entitled and/or which this Court deems necessary and proper.


A jury trial is demanded for all claims triable by jury.

13

Respectfully submitted,


/s/ Sammy Y. Sugiura
Sammy Y. Sugiura
PA I.D. No. 209942
ssugiura@edgarsnyder.com
EDGAR SNYDER & ASSOCIATES
US STEEL TOWER, 10TH FLOOR
600 GRANT STREET
PITTSBURGH, PA 15219
TELEPHONE: (412) 391-2101
FACSIMILE: (412) 391-7032

**COUNSEL FOR PLAINTIFF**

# EXHIBIT B

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

PRESTINE BUSH,                          :
                                        :
                    Plaintiff,          :
                                        :
          v.                            :     CASE NO.: 2:19-cv-01004-NR
                                        :
COMCAST CABLE COMMUNICATIONS            :
MANAGEMENT, LLC, COMCAST                :
CABLE COMMUNICATIONS, LLC, AND          :
COMCAST CORPORATION                     :
                                        :
                    Defendants.         :

## <u>VERIFIED STATEMENT OF LINDSAY HINKLE</u>

I, Lindsay Hinkle, hereby declare that the statements made in this Verified Statement pursuant to 28 U.S.C. § 1746, are true and correct to the best of my knowledge and belief. I understand that false statements made herein are subject to the penalties of perjury and state as follows:

1.      I am currently employed by Comcast as Principal, HR Digital Technology Strategy. My previous position with Comcast was Senior Specialist of HR Systems and Technology.

2.      In 2016, Comcast developed and rolled out an online new hire onboarding system called the Comcast Welcome Portal (the "Welcome Portal").

3.      I have been directly involved in various aspects of the Welcome Portal since its roll-out at Comcast in April 2016. My main job function as Senior Specialist of HR Systems and Technology was to support the Welcome Portal. In that role, I led the day-to-day administration of the Welcome Portal. I am the subject matter expert at Comcast for all Welcome Portal related matters.

4.      Since April 2016, Comcast has used the Welcome Portal to onboard new hires. New hires are required to access the Welcome Portal in order to view offer letters and other related information and to formally accept or decline offers of employment.

5.      After being verbally informed of a job offer, new hires receive an email from Comcast, which is sent to the email address used to apply for the position.  The email from Comcast contains a link and a temporary password to access the Welcome Portal.

6.      After a new hire logs into the Welcome Portal with the temporary password, the new hire is prompted to create a new personal password, which he or she can use to access the Welcome Portal in the future.

7.      When a new hire accesses the Welcome Portal, the new hire is able to view and electronically sign his or her offer letter.  The Welcome Portal also includes links to important on-boarding documents referenced in the offer letter.

8.      In order to electronically sign the offer letter, a new hire must select between two buttons at the bottom of the offer letter on the Welcome Portal: "I Accept" or "I Decline."

9.      Once the new hire selects the "I Accept" button, they must type their name in a signature box.  After signing the offer letter, the candidate has the option to (1) save and complete later; (2) save and submit; or (3) cancel.  For the offer letter acceptance task to be completed and in order to continue on to additional onboarding tasks (*i.e.* completing the I-9 process), the new hire must select "save and submit."

10.     The date and time on which a new hire electronically signs an offer letter is electronically stored on the PDF version of the offer letter.  The signed offer letter is not submitted to Comcast until the new hire clicks "save and submit" on the Welcome Portal.

11.     On January 24, 2017, Comcast notified Ms. Bush, via email, that her offer letter

was ready for her to review on the Comcast Welcome portal.  The email to Ms. Bush was

triggered by Colleen Condran, a member of Comcast's recruiting team.  Attachment A is a

screenshot of the record I used to confirm this information.  It is Comcast's regular practice to

generate and preserve the records that are reflected in Attachment A.  Specifically, the Item

"Event:New Hire Onboarding Task: Offer Letter Hourly External Regular - QA" (second row

from the bottom) indicates that Ms. Condran completed this task, triggering the subsequent task,

"Event:New Hire Onboarding Task: Email Notification- Offer Letter Issued to Candidate" (third

row from the bottom), which means that an email would be sent to the email address included in

Ms. Bush's application for employment.

12.     Attachment A also shows that the individual logged into the system under

Ms. Bush's credentials and completed Ms. Bush's Form I-9 Section 1 on January 25, 2017 (first

row).

13.     In order to complete Section 1 of the Form I-9, Ms. Bush was required to included

her name, address, date of birth, social security number, email (prestineb@yahoo.com), and her

telephone number.

14.     As with all offer letter emails generated by the Welcome Portal system, the email

to Ms. Bush directed her to the Welcome Portal to review her offer letter and other important

documents, and provided her a temporary password to access the Welcome Portal.

15.     The Welcome Portal does not store individual copies of these emails to new hires.

However, the template that we use for offer letter emails is attached here as Attachment B.

16.     In order to view her offer letter, Ms. Bush would have had to follow the link to

the Welcome Portal provided in the email, log into the Welcome Portal with her email address

and the temporary password provided in that email.  She then would have created a new personal password that she would use to access the Welcome Portal going forward.

17.     Comcast's Welcome Portal records, which are kept in the course of regularly conducted business for the purpose of tracking new hires' acceptance of offers and other related information, indicate that, on January 24, 2017, the individual who logged into the Welcome Portal with Ms. Bush's email address and password viewed Ms. Bush's offer letter, selected the "I Accept" button on the offer letter, and, at 11:29 p.m., typed the name "Prestine Bush" to electronically sign the offer.  Attachment C is the PDF version of Ms. Bush's offer letter that was automatically saved and stored in the Welcome Portal after it was electronically signed (after Ms. Bush completed her onboarding process via the Welcome Portal, the PDF was transferred and permanently stored in Comcast's document retention system).  The final page of the offer letter shows that Ms. Bush's offer letter was signed by an individual using Ms. Bush's email account (prestineb@yahoo.com) on "January 24, 2017 23:29:13-0500."  Attachment C at p. 4.

18.     Comcast's Welcome Portal records further show that someone logged into Ms. Bush's Welcome Portal account on January 24, 2017 and completed the offer letter acceptance task by clicking "save and submit" at 11:33:45 p.m.  Attachment D is a screenshot of the Welcome Portal page that Ms. Bush would have seen, which shows at the very bottom that the "Review and Sign Your Offer Letter" task was completed by "Prestine Bush (prestineb@yahoo.com) – 1/24/2017 11:33:45 PM EST."  It is Comcast's regular practice to generate and preserve the records that are reflected in Attachment D.

19.     Ms. Bush's name could only have been saved to the document reflected in Attachment D by a person using Ms. Bush's unique login ID and password.

20.     Ms. Bush's offer letter contained, among other provisions, an agreement to be bound by Comcast's alternative dispute resolution program, called Comcast Solutions. Attachment C at p. 3.  In full, the portion of the Offer Letter that addresses Comcast Solutions stated:

> Comcast has a dispute resolution program for its employees, known as Comcast Solutions, which provides a three-step process (facilitation, mediation and binding arbitration) for resolving a variety of workplace legal issues should there be any that arise between you and the Company during or after your employment. A brochure with information and directions on how to obtain additional information related to the program is being provided to you along with this offer letter. Please review this information carefully, as the program affects the legal rights of both you and the Company (including a waiver of the right to bring a civil action in federal or state court or before a civil judge or jury, as well as a waiver of the right to bring or participate in a class action, collective action or representative action). If you cannot locate the brochure, have any questions or need additional information regarding Comcast Solutions, please call, toll free, 855-838-4180, or email to mailto:Comcast_Solutions@cable.comcast.com. By accepting this offer of employment with the Company and signing below, you acknowledge that you understand the terms of the Comcast Solutions program and also acknowledge that both you and the Company agree to participate in and be bound by the terms of the Comcast Solutions program.

21.     As noted in Ms. Bush's offer letter, below the link to the offer letter on the Portal was a notice that "[w]ithin your Offer Letter, you will find details about our Comcast Solutions program.  To learn more about the program, please click the link below to download and save a copy of the brochure for your records."  See Attachment D.

22.     Attachment E is a copy of the Comcast Solutions brochure that was available to Ms. Bush through the link below the offer letter on the Welcome Portal.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on November **15**, 2019

_____
Lindsay Hinkle

# Attachment A

**Prestine Bush**

118 Tecumseh St, Pittsburgh, PA 15207 – (646)245-9490 – prestineb@yahoo.com

**Objective**

A reliable, competent and eager worker. Detailed oriented and able to multi-task in a fast pace environment. Excellent communication, organizational and customer service skills. A fast learner with proven ability to prioritize and complete multiple assignments in a timely manner. Proficient in MS Word, Excel and PowerPoint and Type 39 WPM. Highly motivated and work well with others. To obtain a position in which will allow me to utilize my skills and work experience.

**Experience**

**Kforce**

**Contract employee with PNC**

**Indirect Booking**

**Pittsburgh, PA**

*03/2016-09/2016*

- Locate missing documentation needed to complete auto loan
- Contact Auto dealerships in order to obtain necessary documents
- Work in a low supervised area
- Complete auto loan packets
- Work closely with underwriters to achieve quota based goals
- Maintain a working relationships with auto dealers

**Citizens Bank**

**Contact Center Specialist**

**Pittsburgh, PA**

*09/2013 – 04/2015*

- Handled high volume incoming calls
- Provided customers with account balances, account rates both current and new
- Promoted new company products and enhanced customer's account based on customer need
- Maintained above 90% productivity exceeding company's 78% quota
- Maintained above 80% sales enhancement on accounts
- Trained in Online Banking and several other company products

**Contact Center Specialist**

Alorica, West Mifflin, PA

3/2012- 4/2013

**Retention Specialist**

* Assisted members with account information such as updates, charge explanations and product information

- Maintained 35%-40% daily save rate exceeding company's 25% quota
- Handled high volume inbound calls
- Informed member of terms of service
- Heavy- typing and multi-tasking

08/2010-08/2011 Tuff Stuff Productions        New York, NY

Freelance Writer

☐        Scheduled/ Rescheduled  appointments

☐        Composed new songs and lyrics for  artists

☐        Handled administrative duties such as filing, answering  calls, maintaining contact with existing artists

03/2010-08/2010 U.S. Census Bureau        Bronx, NY

Administrative Assistant

- Processed Payroll, New Hire Packets, Conversions and Terminations
- Organized employee files, supply cabinet and Administrative office
- Clarified discrepancies in payroll, employee inquiries and questionable enumeration
- Performed receptionist duties consisting of receiving high volume incoming and outgoing calls and greeting visitors
- Cross trained in Field Operations and Quality Assurance departments

09/2009-1/2010  NYC Parks and Recreation        Bronx, NY

Seasonal Maintenance Worker

- Performing exterior and interior maintenance duties throughout several parks in the Bronx
- Sweeping and raking leaves, safely dispose of litter and debris
- Operating leaf blower, lawn mower, and weed whacker to beautify parks
- Ensuring all Parks' policies and procedures are followed daily to guarantee safety
- Painting park benches and remove any graffiti in compliance with Parks Inspection Program standards
- Providing excellent customer service to all park patrons; answered questions and provided directions
- Monitoring grounds for harmful materials such as glass and nails; alert supervisors and co-workers of hazardous materials

2

Prestine Bush
118 Tecumseh St, Pittsburgh, PA 15207 – (646)245-9490 – prestineb@yahoo.com

| | |
|---|---|
| **Education** | **Degree obtained** |
| | John V. Lindsay Wildcat Academy, New York, NY |
| | 6/2004 |
| | You might want to include your GPA here and a brief summary of relevant coursework, awards, and honors |
| **Communication** | You delivered that big presentation to rave reviews. This is the place to showcase your skills. |
| **Leadership** | Are you head of the condo board, or a team lead for your favorite charity? This is the perfect place to let everyone know. |
| **References** | **Reference name, Company** |
| | Contact Information |

3

Prestine Bush
118 Tecumseh St, Pittsburgh, PA 15207 – (646)245-9490 – prestineb@yahoo.com

# Attachment B

# Congratulations!
## Offer Letter



01/24/2017

Prestine Bush
118 Tecumseh Street
Pittsburgh   PA          15207


Dear   Prestine          :

I am pleased to extend an offer to you to join Comcast in the role of  CE1, CUST EX  .

We are excited about the prospect of you joining our Company and believe that your skills and experience will enable you to fit nicely with our team. In your new role, you will report directly to me and will be based at our  Pittsburgh          office. As discussed, I anticipate your start date to be  01/30/2017          .

<img align="center"
src="/map_images/main/RedCarpet/FormTemplates/Comcast_Offer_Letter_Hourly_External_Regular/New_Offer_Letterhead.png" border="0">

January 24, 2017

Prestine Bush
118 Tecumseh Street
Pittsburgh, PA  15207


Dear Prestine:

I am pleased to extend an offer to you to join Comcast in the role of CE1, CUST EXP REP (PRIORITY).

We are excited about the prospect of you joining our Company and believe that your skills and experience will enable you to fit nicely with our team. In your new role, you will report directly to me and will be based at our Pittsburgh office. As discussed, I anticipate your start date to be January 30, 2017.

Your starting hourly rate for this non-exempt position will be $14.00/hour, less applicable taxes and withholdings. Wages generally are reviewed in connection with the performance review process. You will be eligible for your first performance/merit review in March 2018, for calendar year 2017.

You will be eligible for a performance bonus for calendar year 2017, based on a target bonus amount 5% of your eligible earnings, with the payout calculated based on achievement against Company-defined goals, per the terms of the applicable plan.

**BENEFITS**

We are pleased to offer you a comprehensive benefits package, which includes health and group benefits as well as a very attractive 401(k) match. More detailed information about your benefits and how to enroll will be sent to your home in the coming weeks. Most benefits will become effective on your 91st day of employment.

If you are planning to add dependents to your health care coverage, you will be required to provide documentation in order to verify your relationship with the covered dependents, in accordance with applicable law. Required documentation may include marriage certificate, birth certificate, prior-year federal tax return, or other types of documents that verify the eligibility of your dependent(s). You may want to start gathering relevant documents, if they are not currently available. The Dependent Verification Center will follow up with you as necessary to complete the process.

**401(k)**

Comcast offers a 401(k) Plan that allows you to contribute from 1% to 50% of your eligible pay to a traditional, pre-tax 401(k) option, a Roth 401(k) option (after-tax), or a combination of the two. To help you achieve your retirement goals, after 90 days of service, you will be automatically enrolled in the traditional, pre-tax 401(k) option at a rate of 3% of your pay, unless you have previously selected a different percentage. You also can opt out of participation and/or sign up for Roth 401(k) contributions by submitting an election prior to your 90th day of service (elections may be made after 60 days). The Plan also offers an Annual Increase Program, where, if you remain automatically enrolled at 3%, your contributions will increase by 1% each year up to a maximum of 10% unless you take action.

Under the current retirement plan provisions, the Company will match up to 100% of the first 4.5% you contribute, subject to certain 401(k) plan caps. If you do not make an election from the Plan's available investment funds, both your contributions (pre- or post-tax Roth) and the Comcast Company matching contributions will be invested in the Vanguard Target Retirement Trust Select Fund that is most appropriate based on your age. Information on the Plan, including details on the Plan's investment options, will be sent to you at your home by Fidelity Investments, our Plan's Administrative Service Provider, on or around your 60th day of employment.

**EMPLOYEE STOCK PURCHASE PLAN**

You also will receive information on the Employee Stock Purchase Plan (ESPP), which offers the opportunity to purchase shares of Comcast stock at a 15% discount, subject to certain holding and other restrictions. You will be eligible to enroll in this Plan during the quarterly enrollment period following the completion of 90 days of employment (1 year if you are a part-time employee working less than 20 hours).

**FINANCIAL SERVICES**

You will also be eligible for financial services, such as financial counseling provided by AYCO at no cost to you, and investment guidance within your 401(k) plan provided by Financial Engines (online advice is at no cost to you, or there is a fee based managed account service available).

The Company continuously reviews its compensation and benefits programs in an effort to address business needs. As a result, there may be modifications from time to time to the Company's compensation and benefits programs. In the event changes are made, you will be notified in accordance with the Company's policies and procedures.

**PRE-EMPLOYMENT REQUIREMENTS**

As a condition of employment, you will be required to satisfactorily complete a pre-employment drug screening test, as well as a background check. Please note you will receive an email regarding the drug screen directly from our partner, eScreen. Upon notification from eScreen you will have two business days to complete the test. Also, a separate notification will be emailed directly from our background check partner, CARCO. Again, you will have two business days to complete the required information for CARCO to perform the background check.

**COMCAST SOLUTIONS**

Comcast has a dispute resolution program for its employees, known as Comcast Solutions, which provides a three-step process (facilitation, mediation and binding arbitration) for resolving a variety of workplace legal issues should there be any that arise between you and the Company during or after your employment.  A brochure with information and directions on how to obtain additional information related to the program is being provided to you along with this offer letter.  Please review this information carefully, as the program affects the legal rights of both you and the Company (including a waiver of the right to bring a civil action in federal or state court or before a civil judge or jury, as well as a waiver of the right to bring or participate in a class action, collective action or representative action).  If you cannot locate the brochure, have any questions or need additional information regarding Comcast Solutions, please call, toll free, 855-838-4180, or email to Comcast_Solutions@cable.comcast.com.  By accepting this offer of employment with the Company and signing below, you acknowledge that you understand the terms of the Comcast Solutions program and also acknowledge that both you and the Company agree to participate in and be bound by the terms of the Comcast Solutions program.

It should be noted that the above description of your wage, job title, and benefits information in this letter is not intended to create a contract for a specific term of employment; your employment with Comcast is at-will, which means that either party may terminate the employment relationship at any time, for any reason not prohibited by law.  Nothing in this offer letter (or in any prior written or oral communications between you and the Company), with the exception of the Comcast Solutions obligations set forth above, is intended to create a legally enforceable agreement or promise.

It should be noted that the above description of your wage, job title, benefits and other information in this letter is not intended to create a contract for a specific term of employment or any other legally enforceable agreement or promise, and that your employment with Comcast is at will, subject to the terms of the applicable collective bargaining agreement.  Further, any oral or written promises or commitments made during the pre-hire process are not valid unless contained in this offer letter.

Finally, you represent that your employment with Comcast does not breach, or otherwise violate or contravene, the terms of any employment or other agreement or policy to which you are a party or otherwise bound, such as a non-compete agreement with a current or previous employer. You understand and acknowledge that any misrepresentation by you during the prehire process or thereafter may result in the rescission of this offer or termination of employment, or other appropriate action.

If you are in agreement with the terms contained herein, please electronically sign your name, select "I Accept", and then click "Save and Complete" below letter no later than 2017-01-26    . If you have any questions regarding the offer letter, you may contact  Jason Pagano        at  JASON_PAGANO@CAI .

I look forward to your acceptance and to working with you in a very exciting and challenging environment.

Sincerely,

On Behalf of  Amy Liguori-Beeler


◉  I Accept

◯  I Decline


**ADDITIONAL OFFER DETAILS:**



Accepted:  Prestine Bush (Electronically Signed)

       Prestine Bush

Date:  01/24/2017

REQ ID:  148944


prestineb@yahoo.com [January 24, 2017 23:29:13-0500],

# Attachment C



# Attachment D



**COMCAST SOLUTIONS**

# A channel for effectively resolving workplace legal issues



# Introducing Comcast Solutions

Comcast is committed to creating a positive and productive work environment for everyone—where, true to our Credo, we act with the highest standards of honesty, fairness, integrity and respect for one another.

Comcast provides a number of avenues for addressing workplace issues—through our Open Door policy and Comcast Listens channels. These include speaking with your supervisor, human resources, another local leader, a Comcast Listens representative, or by contacting the hotline or web portal.

While most concerns can be resolved quickly and effectively through these channels, occasionally legal issues arise that are better suited for a more formal dispute resolution process. To address concerns of a legal nature affecting your employment, Comcast provides an additional resource for you called Comcast Solutions.

**COMCAST SOLUTIONS**

# Three steps to resolve workplace legal issues

Comcast Solutions is a three-tiered program that is designed to address many types of workplace legal disputes that would otherwise be heard in a court of law. Examples of the types of claims that Comcast Solutions is designed to address include claims for back pay, commissions or failure to pay overtime, claims for discrimination based on race, gender, age, religion, disability or any other protected class, and claims for sexual or other types of unlawful harassment.

Comcast Solutions offers three steps for resolving these types of claims:

**1  Review/Facilitation**

which involves an internal review of the claim at the Corporate Headquarters or Divisional level

**2  Mediation**

which involves a formal settlement/mediation conference with a neutral outside, professional mediator

**3  Binding Arbitration**

which involves a formal arbitration hearing that proceeds in many ways like a trial, where witnesses and evidence may be presented before a neutral outside, professional arbitrator

# Features of Comcast Solutions

Employment-related lawsuits handled through the court system are almost always disruptive, time-consuming, and costly for everyone involved. We would much rather hear about and resolve any legal issues that may arise right away—to help ensure our employees' time and company resources are used productively in ways that benefit all Comcasters. That's why we created Comcast Solutions. Here are some of the benefits that Comcast Solutions offers:

## It's fair, impartial and effective

Comcast Solutions offers you more than one opportunity to have your legal issues heard by an outside, impartial third-party—someone who is not affiliated with Comcast, who can consider your claims objectively. Professional mediators and arbitrators are often former judges, experienced attorneys or trained professionals. They are not on either side of a dispute, but act like a neutral umpire between the parties.

In the first two steps of the Comcast Solutions process—Review/Facilitation and Mediation—you decide whether to accept the outcome at that phase or move on to the next one. In the final step, an arbitrator will have the authority to award full damages, attorney's fees and other types of relief. Both the company and you will be bound by the arbitrator's final decision.

## It's less expensive

There are no filing fees (or other charges) to you under Steps 1 and 2 of the Comcast Solutions process, as there would be if you filed a case in a court of law. If your legal claim proceeds to Step 3 arbitration, you pay only a small portion of the total arbitration fee ($150), which is reimbursed back to you if you are successful in any of your claims. Importantly, at the arbitration phase, Comcast will pay up to $1500 to cover the cost of your attorney's fees (which payment you will receive even if you are ultimately unsuccessful on your claims, provided the arbitrator does not determine that your claims were frivolous). You also may be able to receive payment for all of your attorney's fees, depending

3

on the outcome of the case and the decision by the arbitrator. In addition,
Comcast employees who have to miss work at Comcast to attend a mediation
or arbitration under the program will be eligible to receive pay for the days spent
at the mediation or arbitration, at their regular (or ABBR) pay rate, without using
up their paid time off.

### It's faster
Cases that are brought in a court of law sometimes can take years to reach
a final resolution, especially if there are extensive motions or lengthy appeals.
There are timing guidelines at each step of the Comcast Solutions process
to provide parties with adequate time to exchange information and obtain
discovery, but also to ensure that you obtain the relief you are seeking in
a timely fashion.

### It encourages an early, cooperative resolution
Cases that are filed in court often ultimately end up being resolved by
a settlement between the parties, sometimes after months or years of
motion filings and expensive litigation practice. Comcast Solutions moves
communications about possible settlement/resolution to early in the process,
potentially saving you and the company time, expense, and attorney's fees.

### It's confidential
Court cases are generally public in nature—something that your neighbors,
friends and others can read about. Claims brought under the Comcast Solutions
program will be kept confidential by the company and the dispute resolution
organization handling the claims, to the extent practicable, given the need to
review and mediate/arbitrate the claims. This means that Comcast will involve
only those with a business need to know.

### It's covered by the company's anti-retaliation policy
Comcast strongly prohibits retaliation against any employee who brings a claim
under the Comcast Solutions program.

# You choose how to proceed

There are two options for raising workplace legal issues:
• Start with **Comcast Listens**, or
• Go straight to **Step 1 of Comcast Solutions**.

## COMCAST LISTENS

**Any** workplace or integrity issue (including non-legal issues)
• Can be anonymous
• Certain integrity issues <u>must</u> be reported

## Open Door/Comcast Listens

You can raise any workplace or integrity issue to:

**1. your supervisor, local manager, or HR;**
**2. your Comcast Listens representative; or**
**3. through the Comcast Listens helpline or web portal.**

**INTERNAL RESOURCE**

Claims raised through the Comcast Listens helpline/website can be made on an anonymous basis. All claims raised will be promptly investigated internally and, where appropriate, action will be taken.

5

# COMCAST SOLUTIONS

Claims of a **legal** nature affecting your employment
- Not anonymous
- You can be represented by an attorney, if you prefer

 ## Review/Facilitation

Your claim will be reviewed by a Comcast Solutions Lead to determine if it is a covered legal claim. If it is, the Comcast Solutions Lead will work with both you and company representatives in an attempt to work out a mutually satisfactory resolution to the issue. If you are not satisfied with the proposed resolution, you can decide to proceed to the next step.

**INTERNAL RESOURCE**

 ## Mediation

If your issue is not resolved through review/facilitation, you may request that the claim proceed to a professional, external dispute resolution organization for mediation. A mediation/settlement conference will be held in an attempt to reach a mutually satisfactory resolution. It is not required, but you may bring an attorney at your own cost. If you are not satisfied with the mediation result, you can decide to proceed to the next step.

**EXTERNAL RESOURCES**
Dispute Resolution Organization

 ## Arbitration

If mediation is unsuccessful, you may request an arbitration hearing on your claims, similar to a court proceeding, but decided by an independent arbitrator who is approved by the American Arbitration Association or JAMS,[1] and is not an employee of Comcast. Again, you can be represented by an attorney at this phase (and Comcast will give you up to $1500 towards attorney's fees). The arbitrator will review evidence and listen to witnesses before rendering an opinion, which will be final and binding on you and on the company.

[1]JAMS stands for the Judicial Arbitration and Mediation Services organization.



# Important information
# about Comcast Solutions

By accepting employment with Comcast, you are agreeing that you and the company will be bound by the Comcast Solutions program for covered legal claims. Upon returning your signed offer to the company, you will be automatically enrolled in Comcast Solutions.

We strongly urge you to read the Comcast Solutions Guide, DRO rules and FAQs to ensure you fully understand the Comcast Solutions program prior to accepting employment with the company.

If you have any questions regarding the scope or effect of the Comcast Solutions program (including any questions prior to deciding to accept an offer of employment), you may submit them by:

• email to Comcast_Solutions@cable.comcast.com,

• regular mail to Comcast Solutions Administrator, c/o Comcast, 1701 JFK Blvd, 34th Floor, Philadelphia, PA 19103, or

• phone (toll free) to 855-838-4180.

You may also visit the DRO websites located at **www.jamsadr.com** and **www.adr.org** for more information on mediation and arbitration.

> **To participate in the Comcast Solutions program, both you and the company waive the right to a civil action or a jury trial for any covered claims. You also waive the right to bring or participate in a class action or in a collective or representative action on covered legal claims, to the fullest extent permitted by law. All covered legal claims will be handled through the three-step Comcast Solutions process; both you and the company will be bound by the final decision of the arbitrator.**

Comcast cares about you—and any time you have a problem at work, it matters. You deserve respect, attention, and a clear, neutral process to help resolve your problems—quickly and fairly. Comcast Solutions is here to do just that.



FAQ

**Q: What is the difference between Comcast Listens and Comcast Solutions?**
**A:** Comcast Listens is available for all kinds of workplace or integrity issues, big or small, legal and non-legal. Comcast Solutions is only for certain claims of a legal nature affecting your employment, such as allegations of unlawful discrimination or harassment based on a protected category, wage and hour claims, compensation claims, FMLA and other leave of absence claims.

**Q: Will all legal claims be covered by Comcast Solutions?**
**A:** No. Certain kinds of legal claims, including claims for worker's compensation benefits, unemployment compensation benefits, claims brought under the Employee Retirement Income Security Act ("ERISA") for a company-sponsored benefit plan, claims under the National Labor Relations Act ("NLRA") and claims excluded from mandatory arbitration by law will **not** be handled through Comcast Solutions.

**Q: What happens if I submit a claim to Comcast Solutions that is not eligible for the program?**
**A:** If you raise an issue that is **not** a legal claim or is an excluded legal claim (such as a claim for worker's compensation benefits), you will be informed of this—and directed to raise the claim in an appropriate forum. You also will be given the chance to amend your Comcast Solutions claim to state a covered legal claim, if applicable. Certain claims that are not legal in nature may be referred, after discussion with you, to the Comcast Listens Program for resolution, if appropriate.

**Q: By participating in Comcast Solutions, do I waive my right to go to the EEOC, NLRB, other federal/state/local agencies, and/or to court?**
**A:** Comcast Solutions does not affect your right to go to the EEOC, NLRB or any federal, state or local agency. You will still be able to do so. By participating in Comcast Solutions, however, both you and the company are waiving the right to have covered legal claims heard by a judge or jury in a court of law or equity.

**Q: What is the difference between Mediation and Arbitration?**
**A:** Mediation is a process where an external, professional mediator tries to get both sides of a dispute (in this case, an employee and the company) to reach a mutually acceptable resolution to the claims. The mediator does this by reviewing the facts and talking to both sides, together and separately, to reach a solution. Arbitration, in contrast, is like a mini-trial. An external, professional arbitrator acts as a judge and listens to evidence presented by both sides, including witness testimony, before making a final decision. "Binding" arbitration means both you and the company are bound by the arbitrator's decision.

**Q: What is the Dispute Resolution Organization (DRO)?**
**A:** A DRO is an outside independent entity that offers mediation and arbitration services to help resolve disputes outside of the court system. Comcast utilizes the American Arbitration Association (AAA) and Judicial Arbitration and Mediation Services (JAMS), both well-known DROs, as part of the Comcast Solutions program. Employees working in California, Colorado, Connecticut, Delaware, Florida, Georgia, Illinois, Maryland, Massachusetts, Minnesota, New Hampshire, New Jersey, New York, Pennsylvania, Rhode Island, Vermont, Virginia and Washington will be covered by JAMS; all others will be covered by AAA. You are encouraged to learn more about these DROs by contacting the Comcast Solutions team or reviewing the DRO websites.

**Q: Do I have to go through Comcast Listens before filing a claim with Comcast Solutions?**
**A:** No. While we strongly encourage participation in our open door/Comcast Listens process, this is not a required first step.

**Q: Do I have to have an attorney to participate in Comcast Solutions?**
**A:** No. You may have an attorney represent you throughout the Comcast Solutions process, but this is not required.

**Q: Are there time limits on when I can bring my claims?**
**A:** Yes. As in a court of law, there are time limits (or "statutes of limitations") for bringing legal claims. You should consult with a legal advisor to determine the timeliness of claims. The timeliness of your claim will be determined by the date it is first submitted to the Comcast Solutions team.

**Q: How do I get copies of Comcast Solutions materials?**
**A:** You can get them by contacting the Comcast Solutions Administrator at Comcast_Solutions@cable.comcast.com or toll-free at 855-838-4180.

# Where can I get more information?

1    Speak to a Comcast Solutions representative (toll-free) at **855-838-4180**.

2    Email the Comcast Solutions team with questions, at **Comcast_Solutions@cable.comcast.com**.



COM398-121014

# Attachment E

# Comcast Solutions



**Early Dispute Resolution Program**

# Program Guide

At Comcast, one of our goals is to create a positive and productive work environment for everyone – where, true to our Credo, we act with the highest standards of honesty, fairness, integrity and respect for one another. Our commitment to achieve this goal includes providing our employees with multiple avenues in which to voice any workplace concerns that may arise. If you have something on your mind, we want you to speak up. Although it is our belief that our Open Door policy will resolve most concerns quickly and effectively, we recognize that occasionally issues may arise that are better handled through a more formal dispute resolution process.

To address these concerns, Comcast has developed Comcast Solutions ("Comcast Solutions" or "Program").  The goal of Comcast Solutions is to provide a process through which claims can be raised and resolved in a prompt, efficient and appropriate manner.  The following terms and conditions apply to Comcast Solutions.  If you have any questions regarding any aspect of the Program, you may submit your question by email (at Comcast_Solutions@cable.comcast.com) or by calling (toll free) at 1-855-838-4180.  Please also refer to the Comcast Solutions Frequently Asked Questions Brochure ("FAQ Brochure").

## 1.  Who is covered by the Program?

Regular full-time and part-time employees of Comcast Corporation and Comcast Cable (as well as any subsidiaries and/or affiliates that adopt the Program, which affiliates or subsidiaries shall not include NBCUniversal) (collectively, "Company") are eligible to participate in Comcast Solutions ("Eligible Employees"), provided, however, that any employee who is covered by either an authorized employment agreement or an authorized collective bargaining agreement with the Company will not be considered an Eligible Employee for the Comcast Solutions Program unless the employment agreement or collective bargaining agreement specifically references the employee's participation in the Comcast  Solutions Program.

An Eligible Employee will become a participant in the Comcast Solutions Program as follows:

(a)  Eligible Employees of Comcast Corporation and/or Comcast Cable who were then currently employed ("Current Employees") as of the date that Comcast Solutions was rolled out  in their particular region or business unit (which roll outs occurred during the time period between November 2012 and February 2014) were notified of their eligibility to  participate in the Program and the terms and conditions applicable to the Program. S u c h  Current  Employees were then given the option to decide whether they wanted to participate in the Program or  not. Current Employees who decided not to participate in the Program were directed to complete  a Program "Opt Out" Notice and return it to the Company within a designated opt out period,  which period covered at least thirty (30) calendar days after notice was given ("Opt Out  Period"). Current Employees who did not opt out of Comcast Solutions during the designated Opt  Out Period were enrolled in and covered by the Comcast Solutions Program and a r e   considered "Participating Employees" in the Program.

(b)  Eligible Employees who were not Current Employees at the time of Program roll out and who were subsequently hired or rehired by Comcast Corporation and/or Comcast Cable after the initial roll out

period are to be informed during the offer letter/new hire process that participation in the Program is a condition of their employment with the Company.  Upon accepting  employment with the Company, such employees are enrolled in and covered by the Comcast  Solutions Program and will be considered "Participating Employees" in the Program.

(c)  Eligible Employees who are employed by (or who later become employed by) an affiliate of Comcast Corporation which adopts the Comcast Solutions program (and/or who become employees of Comcast Corporation, Comcast Cable or a participating affiliate as the result of a merger, acquisition, asset purchase, joint venture or related transaction (collectively, "Transaction")) will participate in the Program in accordance with the terms and procedures to be determined and communicated by the Company (or affiliate) at the time of Program rollout for the affected affiliate (and/or, in the case of a Transaction, at or around the time such individuals become employed by the Company or a participating affiliate as result of the Transaction).

In the event a state/locality where an Eligible Employee works enacts a law which prescribes different requirements and/or restrictions on an employee's participation in a mandatory arbitration program such as Comcast Solutions, the Company may adopt such procedures and/or provisions related to employee participation in the Program for individuals in the affected state/locality, as appropriate, in order to ensure compliance with applicable state/local laws.

Individuals who become "Participating Employees" in the Program will continue to participate in Comcast Solutions throughout their employment with the Company and following their termination from employment for any reason, whether by resignation or discharge.  Both the Participating Employee and the Company will be bound by the terms of Comcast Solutions Program for any Covered Claims that may arise between them.

## 2.  What Claims are covered by the Program?

Claims that are covered under Comcast Solutions ("Claims" or "Covered Claims") include any claims (other than the excluded claims identified below) raised between a Participating Employee and the Company, or the Company's subsidiaries, affiliates, predecessors, and successor corporations and business entities ("Company Entities"), and their officers, directors, employees, and agents, that involve an alleged violation of law (including alleged violations of any federal, state or local statute, regulation or common law), where such alleged violation relates to or arises from the employment relationship.  Covered Claims include claims related to or arising from any aspect of the employment relationship, including, without limitation, recruiting and hiring, compensation, terms and conditions of employment, and the termination of the employment relationship.  Examples of Covered Claims include, without limitation, the following:

- Unlawful discrimination or harassment on the basis of race, gender, age, disability, religion, pregnancy, national origin or any other category or characteristic protected by federal, state or local law;

- Unlawful failure to accommodate based on disability, religion or any other category or characteristic requiring accommodation under federal, state or local law;

- Violation of federal, state or local wage and hour laws or regulations, including, without limitation, failure to pay minimum wages, overtime pay, violations of recordkeeping rules and/or improper exempt/non-exempt classification;

2

- Violation of state or local wage payment laws, including without limitation, failure to pay amounts owed (including, without limitation, wages, salary, bonuses, incentives and commissions, to the extent covered by such laws) and/or unlawful deductions from pay;

- Violation of federal, state or local leave laws, including without limitation, violations of the Family and Medical Leave Act ("FMLA") and Uniformed Services Employment and Reemployment Rights Act ("USERRA");

- Unlawful retaliation for past legally protected activity (*i.e.*, whistleblower claims) to the extent such retaliation is prohibited under federal, state or local law; and

- Breach of contract claims and tort claims, including tortious interference with contract, fraud, fraud in the inducement, negligence and/or any kind of unlawful tortious conduct prohibited under applicable federal, state or local law.

Legal claims that are excluded from the Comcast Solutions program are the following:

- Unemployment compensation claims under applicable state/local laws;

- Claims for workers' compensation benefits (or retaliation for filing a claim for worker's compensation benefits) under applicable state/local laws;

- Claims for health and welfare benefits or pension benefits under a Company-sponsored benefit  plan covered by the Employee Retirement Income Security Act ("ERISA");

- Claims under the National Labor Relations Act ("NLRA") or under the terms of a collective bargaining agreement;

- Claims under the federal False Claims Act or federal procurement laws; and

- Any claim that is expressly precluded from arbitration by a federal statute or federal regulation.

No Covered Claims between the Participating Employee and the Company may be brought, pursued or litigated, by either the Company or the Participating Employee, in a federal, state or local court of law or equity.  By participating in this Program, the Company and Participating Employees specifically agree that, to the maximum extent allowed by governing law, they:  (a) waive the right to bring any Covered Claim(s) in a court of law or equity; (b) waive the  right to have Covered Claims heard by a court, judge or jury; and (c) waive the right to bring or pursue  Covered Claims as a representative or member of a class, collective, or representative action (whether   opt-in, opt-out, or otherwise).  All Covered Claims may only be pursued through Comcast Solutions on an individualized basis.

Notwithstanding anything contained herein, both parties shall have the right to seek a temporary restraining order, preliminary injunction or a similar form of equitable injunction or relief in a court of law or equity, provided that such relief is sought in aid of arbitration and/or for the maintenance of the status quo pending arbitration.

**3.  Does my participation in Comcast Solutions mean that I cannot submit a charge or claim with  the Equal Employment Opportunity Commission ("EEOC"), Department of Labor ("DOL"),  National Labor Relations Board ("NLRB") and/or any other state, local or federal agency?**

No.   Nothing in Comcast Solutions is intended to interfere with the rights of Participating Employees or the Company to seek redress through filing charges or claims with any state, local or federal agencies or law enforcement authorities.  Participating Employees may file a charge or claim, participate as a witness and/or submit information with or to such government agencies or entities.  If a Participating Employee's Covered Claim is not resolved through or by the federal, state, or local agency, then (assuming he/she wishes to further pursue the claim) he/she must submit the Covered Claim to individual arbitration in accordance with the Comcast Solutions   Program, except for claims within the jurisdiction of the NLRB or where such claims are expressly precluded from arbitration by a  federal, state or local statute or regulation.

Because we believe Comcast Solutions may be beneficial in resolving disputes between a Participating Employee and the Company, either party may request that a governmental agency or authority defer processing of a particular charge or claim pending the outcome/resolution of the Comcast Solutions process.  It will, however, be the governmental agency's/authority's decision as to the sequencing of processing and/or deferment of processing on such charges or claims pending the outcome of Comcast Solutions.

**4.  How do I submit a Claim to Comcast Solutions?**

Prior to submitting a Claim to the Comcast Solutions program, Participating Employees are encouraged to address their concerns through the Company's Open Door policy, including by voicing their concerns to their direct supervisor, other local or senior managers, local or division human resource representatives and/or through the Comcast Listens Program.  While participation in the Open Door process is strongly encouraged, it is not a mandatory step prior to initiating a Comcast Solutions Claim.

In order to initiate a Comcast Solutions Claim, the Participating Employee or the Company ("Initiating Party") may submit a Comcast Solutions Initial Filing Form ("Initial Form").  All Comcast Solutions forms are available on-line, through the Policies & Guidelines page of ComcastNow.  Forms also may be obtained  by emailing Comcast_Solutions@cable.comcast.com, calling the Comcast Solutions team at 1-855-838-4180 (toll free), calling the Employee Service Center ("ESC") at 1-877-909-4748, or asking a local Human Resources   representative.

In completing the Initial Form, the Initiating Party is asked to identify, to the best of their ability, the type of Claim(s) being asserted, including identifying the specific legal basis (or bases) for the Claim.  The Initiating Party is also asked to provide a brief factual description of the circumstances giving rise to the Claim.  The Initiating Party is not required to fill out the Initial Form, however, and is permitted to submit an alternative document outlining the specific legal claims being raised to the Comcast Solutions administrator (which may also be in the form of a formal complaint, agency charge or otherwise) in lieu of completing the Initial Form.  While the Initial Form provides spaces to include information regarding relevant documents, events and witnesses which may be helpful for facilitation, an Initiating Party may decline to provide this information during the Facilitation phase, provided that the Initiating Party has identified the specific legal claims being pursued.

The Initial Form serves generally as a statement of the Initiating Party's Claims.  The Initial Form (and/or any documents submitted in lieu of the Initial Form) may be shared with counsel for the

opposing party and also may be submitted to the applicable Dispute Resolution Organization (and/or the selected mediator or arbitrator) as part of mediation and/or arbitration process in Steps 2 and 3 below.  A mediator and/or arbitrator may request a more formal statement of Claims, to the extent required in accordance with the applicable Dispute Resolution Organization's rules and procedures.

Once completed, the Initial Form (or statement of claims document submitted in lieu of the Initial Form) must be submitted by mail (to Comcast Solutions Program, c/o  Comcast, 1701 JFK Blvd., 34th Floor, Philadelphia, PA 19103) or by email (to Comcast_Solutions@cable.comcast.com).  The date that the Comcast Solutions Program receives  the Initial Form will become the official Claim Date and may be used to determine the timeliness of the Initiating Party's filing of the Claim, under applicable laws.  (For a brief description of "statutes of limitations" and timeliness requirements for filing claims, please consult the Comcast Solutions FAQ  Brochure.  In all circumstances, however, it is important for employees to consult with a legal advisor/attorney regarding the timeliness of claims.)

**5.  What happens after I submit a Claim to Comcast Solutions?**

The Comcast Solutions Program process consists of three steps:

**1 Review/Facilitation**

which involves an internal review of the claim at the Corporate Headquarters or Divisional level

**2 Mediation**

which involves a formal settlement/mediation conference with a neutral outside, professional mediator

**3 Binding Arbitration**

which involves a formal arbitration hearing that proceeds in many ways like a trial, where witnesses and evidence may be presented before a neutral outside, professional arbitrator

The Comcast Solutions program involves a three-step process.  The first two steps of the Comcast Solutions process, however, are not a mandatory prerequisite before moving to arbitration.  Either party may request to skip Step 1 and/or Step 2 of the process and proceed directly to the next step.  In the typical three-step process, if Claims raised by the Initiating Party are not resolved in Step 1 of the Comcast Solutions process, the matter may then proceed to Step 2 (or directly to Step 3, if either party so requests).

Similarly, if the issues raised by the Initiating Party are not resolved in Step 2 of the process, the matter may next proceed to Step 3.

# Step 1:  Review/Facilitation

During the Review/Facilitation phase of the Comcast Solutions process, a Comcast Solutions Lead is assigned to review the Initial Form submitted by the Initiating Party in order to determine if a Covered Claim has been asserted.  If the Comcast Solutions Lead believes that no Covered Claim h a s  been asserted (for example, if the claim does not appear to assert a legal claim or if the claim is an  excluded legal claim, such as a claim for worker's compensation benefits), the Initiating Party will be  informed of this determination and given the opportunity to submit a revised Form within ninety (90)  calendar days (while preserving the initial filing date for timeliness purposes).  If the Initiating Party   chooses not to submit a revised Form, any issues raised in the Initial Form that are not considered   Covered Claims under Comcast Solutions may be referred to the Comcast Listens program for  review/investigation, if appropriate.  Should the Initiating   Party disagree with the Comcast Solutions Lead's assessment that a claim is not a Covered Claim, the Initiating Party may escalate the disputed claim or claims immediately to a neutral arbitrator (chosen through the applicable Dispute Resolution Organization rules,   as described in Step 3 below) who shall determine whether any or all of the asserted claim(s) qualify as  Covered Claims to be considered under the Comcast Solutions Program.

If a determination is made that the Initial Form asserts a Covered Claim (or Covered Claims),   the Comcast Solutions Lead may review any documents submitted along with the Initial Form, as well  as the results from any past investigation into the claim by Human Resources, Comcast Listens or  other investigators.  As part of this review process, the Comcast Solutions Lead may  (but is not required to) contact witnesses, request additional information from the Participating Employee and/or Company representatives, and/or request that a formal investigation be conducted.  The review process is intended to help facilitate an understanding and resolution of the Claim, but either Party may decline to participate in this process.

After reviewing the Claim, the Comcast Solutions Lead will attempt to resolve the complaint internally,   by working with both the Participating Employee and Company representatives in an attempt to reach a resolution of the issues raised, without the need to proceed to outside Mediation.  Any deliberations by the Comcast Solutions Lead and  communications to or from the Comcast Solutions Lead (whether with the Participating Employee,   Company representatives and/or other witnesses) during the Review/Facilitation process will be considered part of confidential settlement discussions and will be kept  confidential, to the extent possible (given, of course, the need to review, investigate and/or facilitate  the Claims), and all such communications and deliberations will be deemed inadmissible and not   subject to discovery by either party in any future (*e.g.*, Step 2 or Step 3) proceedings.

If a resolution is not reached during the Review/Facilitation phase, the Participating Employee and Company will be notified by the Comcast Solutions Lead that Facilitation has failed.  Once the Review/Facilitation phase is completed, the Initiating Party will then have up to one hundred eighty (180) calendar days  to initiate Step 2 (Mediation) or ask to skip to Step 3 (Arbitration), by filing a Mediation Request Form or Arbitration Request Form with the Comcast Solutions Lead.  If  the Initiating Party does not request Mediation or Arbitration within 180 calendar days, the Claim(s) set forth in the  Initial Form will be considered closed and resolved.  (Any subsequent challenges to such closure may be submitted to a neutral arbitrator, selected through the DRO, as outlined in Step 3 below.)

An employee may (but is not required to) have an attorney represent him/her (at his/her own cost) during Step 1 in the Comcast Solutions process.

# Step 2: Mediation

If Step 2 (Mediation) is requested by the Initiating Party, the Comcast Solutions Lead will work with  the Participating Employee and Company representatives to schedule a one-day mediation session to be conducted with an outside, professional dispute resolution organization ("DRO"), such as the American Arbitration Association ("AAA") or JAMS (Judicial Arbitration and Mediation Services), under the rules and mediator selection procedures propounded by such DRO.[1]  The  Comcast Solutions Lead will attempt to schedule the mediation within 90 days of the initial request for  Mediation, at a location which is as convenient to the Participating Employee's work location (or former work location) as practicable, subject to the availability of DRO mediators and mediation facilities in the local area.

Provided the Participating Employee is employed with the Company at the time of the Mediation and would otherwise be scheduled to work on the day of the Mediation,  he/she will be excused from work and will receive his/her regular pay for the scheduled day of  Mediation, without being required to use his/her available Paid Time Off ("PTO").  (For ABBR-eligible commissioned employees, regular pay will be calculated at the daily  ABBR rate).

Both the Participating Employee and the Company may be (but are not required to be) represented by attorneys at the Mediation,  at their own cost.  (The Company's attorney may be, but is not required to be, an employee of the  Company.)  There will be no formal "discovery" as part of a  Step 2 Mediation, although the Participating Employee will be entitled to review his/her personnel file  prior to the Mediation. Both parties also will be entitled to review the Initial Form (including any  attached documents).

Both parties may provide a mediation statement to the Mediator prior to Mediation, if requested by the Mediator; a suggested length for the mediation statement (and rules regarding exchange of statements) will be determined  by the selected Mediator.  The Participating Employee, Company representatives and/or their respective  attorneys may attend the mediation.  The Company will cover the full costs of Mediation (unless the Participating Employee  requests otherwise).  The Mediator will not be told by the Company that the Company is covering the  full mediation costs.  If the Mediation fails to reach a resolution, all communications made during the  Mediation process will be deemed confidential and inadmissible settlement discussions and will not be subject to discovery in  any future Step 3 (Arbitration) proceedings. Any resolution that is reached during the Mediation phase  will be memorialized in a formal, signed settlement/resolution agreement between the parties (which agreement will address how the confidentiality of the proceedings and/or the agreed upon   resolution will be handled).

If Step 2 (Mediation) fails to yield a resolution of the Claim(s), the Initiating Party will have up to   one hundred eighty (180) calendar days to initiate Step 3 (Arbitration) by filing an Arbitration Request Form with the Comcast  Solutions Lead.  If the Initiating Party does not request Arbitration within 180 calendar days, the Claim(s) set forth in the Initial Form will be considered closed and resolved.  (Any subsequent challenges to such closure may be submitted to a neutral arbitrator, selected through the DRO, as outlined in Step 3 below.)

---

[1]        Participating Employees may obtain a d d i t i o n a l information on which DRO has been designated to handle proceedings in the  Participating Employee's geographic area, as well as the particular DRO's rules governing mediation and/or arbitration   proceedings, by requesting the information from Comcast_Solutions@cable.comcast.com or by accessing the Comcast   Solutions Dispute Resolution Organization Map through the Policies & Guidelines page of ComcastNow.  Participants that work (or previously worked) in California, Colorado, Connecticut, Delaware, Florida, Georgia, Illinois, Maryland, Massachusetts, Minnesota, New Hampshire, New Jersey, New York, Pennsylvania, Rhode Island, Vermont, Virginia, Washington D.C., and Washington state will be covered by JAMS; information on JAMS rules and procedures is available on ComcastNow and at www.jamsadr.com.  Participants working in all other states will be covered by the American Arbitration Association ("AAA"); information on AAA rules and procedures is available on ComcastNow and at www.adr.org.  The Comcast Solutions program does not apply to employees working outside of the United States.

# Step 3: Final, Binding Arbitration

If Step 3 (Arbitration) is requested by the Initiating Party, the Comcast Solutions Lead will work with   the Initiating Party to submit a request for arbitration (to  be conducted by a single Arbitrator) through the applicable DRO (as defined in Footnote 1 above), under the  employment claim rules/procedures propounded by the DRO.  (Copies of these rules/procedures are available on the Company intranet website, by contacting the Comcast Solutions Team toll-free at 1-855-838-4180, by emailing Comcast_Solutions@cable.comcast.com, or by visiting www.jamsadr.org or www.adr.org, respectively.)  Once this arbitration request is  initiated, an Arbitrator will be mutually selected by the parties in accordance with the DRO's rules.  The Comcast Solutions Lead will request that the arbitration be held as soon as possible after the initial  request, at a location that is as convenient to the employee's work location (or former work location) as practicable, subject to   the availability of DRO arbitrators and arbitration facilities in the local area (and after providing sufficient time for discovery).

Provided the Participating Employee is employed with the Company at the time of the arbitration and would otherwise be scheduled to work on the day(s) of the arbitration,  he/she will be excused for his/her absences on the scheduled arbitration days and also will receive his/her regular pay for his/her attendance during the  scheduled arbitration hearing days, without having to use his/her available PTO.  (For ABBR-eligible commissioned employees, regular pay will be  calculated at the daily ABBR rate).

The Participating Employee and the Company may be represented by attorneys at the  arbitration, at their own cost (subject to the provisions below).  (The Company's attorney may be, but  is not required to be, an employee of the Company.)  Consistent with the employment arbitration rules of the particular DRO, the Arbitrator has the discretion to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the Arbitrator considers to provide for a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration and the applicable DRO rules.  In addition, the minimum standards of procedural fairness (if any) of the DRO applicable to employment disputes shall apply to arbitration under the Program.  Generally, the parties will be entitled to subpoena third parties for deposition or  production of documents and information as part of the process.  Any discovery disputes will be submitted to and resolved by the Arbitrator.  Upon completion of discovery, an arbitration hearing will be scheduled, which generally is expected to be scheduled to occur over consecutive 8-hour business days.

The Arbitrator will apply applicable federal,   state or local law in assessing the merits of the Claim(s) and will determine the rules of evidence.  Both sides will be permitted to submit a post-hearing brief following the hearing; the  arbitrator may establish the timeline for filing and suggested length for the brief.  The Arbitrator will issue a written opinion,  setting forth his/her findings and ruling on the matter.  The Arbitrator is authorized to award any damages, attorney's fees or equitable relief that would be available through a court.  The Arbitrator, however, is not authorized to award class or collective  relief.

The Company will cover the full costs to the DRO for the arbitration hearing (unless the Participating Employee   requests otherwise) with the exception of an initial $150 arbitration initiation fee, which the Participating Employee will be required to pay (if he/she is the Initiating Party) prior to the  commencement of the Arbitration.  (If the Company is the Initiating Party, the Company will pay the full costs of the Arbitration.)    The Arbitrator will not be told by the Company that the Company is  covering the majority of the arbitration costs.

At the conclusion of the Arbitration, the Company will  reimburse the Participating Employee for up to $1500 in attorney's fees (or related costs) generated by his/her  attorney's preparation for and/or attendance at the Arbitration, subject to appropriate documentation of such fees and regardless of the outcome of the case, unless the Claim was brought by the  Participating Employee and is determined by

the Arbitrator to have been frivolously filed.  To obtain reimbursement, the Participating Employee should submit a request for reimbursement, along with documentation of fees/costs incurred from his/her attorney, within ninety (90) days of the conclusion of the Arbitration.  (In addition,  depending on the outcome of the case, the Arbitrator will have the authority to award additional  attorneys' fees to the Participating Employee as part of any final award, to the same extent that such  fees could have been awarded had the Claim(s) been filed in court.)  If the Arbitrator ultimately  awards in the Participating Employee's favor, in whole or in part, the Company also will reimburse the  Participating Employee for any $150 initiation fee (if it was initially paid by the Employee).  The Arbitration  hearing and the results of any Arbitration determination will be kept confidential by the Parties, although either party may petition the Arbitrator for an exception to the confidentiality rule, setting forth the grounds for permitting broader disclosure.

If the  Arbitrator determines at any point during the arbitration process that the Claims were not timely filed and/or that no Covered Claim has been asserted by the Initiating Party,  the Arbitrator will have the authority to dismiss the Claim(s) with prejudice.

The Arbitrator's decision  will be final and binding, subject to the provisions of the Federal Arbitration Act, 9 U.S.C. §§ 1-14  ("FAA") and may be enforced by a court.   No arbitration award or decision will have any preclusive  effect as to any issues or claims in any dispute, arbitration, or court proceeding where any party was   not a named party in the arbitration.

**6.  Do the Company and/or Participating Employees waive their right to have their Covered Claims heard in court and/or to bring Covered Claims as part of class, collective or representative action and/or to participate in a class action, collective or representative action?**

As part of this Program, both the Company and Participating  Employees, specifically and to the fullest extent permitted by governing law, waive their right to have Covered Claims heard in court.

In addition, as part of this Program, both Participating Employees and the Company, specifically and to the fullest extent permitted by governing law, waive the right to (1) file, bring, or maintain any Claims  covered by the Program on a class action basis, collective action basis, or representative action basis (whether opt-in or opt-out or representative), (2) serve or participate as a representative or member of any such class action, collective action, or representative action, or (3) recover any relief from any such class action, collective action, or representative action.  Participating Employees further agree that if they are included within any such class, collective, or representative action, they will take all steps necessary to opt-out of the action or refrain from opting in, as the case may be.

To the fullest extent permitted by governing law, any Covered Claim filed or brought in court or  i n arbitration as a class, collective, or representative action shall be decided in arbitration on an <u>individual</u> basis.  Any issue concerning the validity or enforceability of the waiver in this section ("Waiver") shall be decided by a court of competent jurisdiction, and the arbitrator shall not have any authority to consider or decide any issue concerning the validity or enforceability of the Waiver.

A Participating Employee has the right to challenge the Waiver in this section on any grounds that may exist in law and equity, and the Company shall not take any discipline, discharge, or any retaliatory actions against such Participating Employees in the event they choose to challenge the validity of the Waiver.  However, the Company reserves the right to attempt to enforce the Waiver and the Program in any appropriate forum.

Except as provided herein, if any aspect of this Program is determined by an Arbitrator or Court to be invalid, unconscionable, or unenforceable, the affected provision will be stricken from the Program and the remaining terms will  be enforceable.  If for any reason this class, collective, or representative action Waiver set forth above is found to be invalid, unconscionable, or unenforceable, the class, collective or representative  action claim may only be heard in court and may not be arbitrated.  If the Waiver set forth above is determined to be invalid, unconscionable, or  unenforceable with respect to any Covered Claim, the Waiver shall remain effective and enforceable  with respect to all other Covered Claims.  Any issue concerning arbitrability of a particular issue or  claim pursuant to the arbitration agreement (except for those concerning the validity or enforceability  of the Waiver) shall be resolved by the Arbitrator, not the court.

**7.  Can I be retaliated against for submitting a Claim or participating as a witness under Comcast  Solutions?**

No.  The Company strictly prohibits retaliation against any Company employee who, in good faith, submits a Claim and/or participates as a witness through the Comcast Solutions process.   Any concern about retaliation should be promptly reported to Comcast_Solutions@cable.comcast.com. Any employee, supervisor or manager who engages in retaliatory behavior will be subject to disciplinary action, up to and including discharge.

---

*NOTE:  This Document is intended to set forth the terms and conditions of the Comcast Solutions Early Dispute Resolution Program.  In the event an oral or written statement is made about or relating to Comcast Solutions that in any way conflicts with a provision contained in this Document (including statements made by Comcast personnel or statements contained in any Comcast Solutions brochure, FAQ, form or related program document), the provisions of this Document will govern.   Nothing in this Document should be construed as creating a contract of guaranteed employment for any employee of the Company or as otherwise altering the "at will" nature of employment with the Company.  The terms of the Comcast Solutions Program may not be amended orally.  The Company may not eliminate, change or amend the substantive rules governing the Comcast Solutions Early Dispute Resolution Program for current participants unless (1) such amendment, elimination or change affects only future participants and does not affect current participants in the Program; (2) such amendment, elimination or change is required to ensure the Program complies with applicable federal, state or local law; or (3) the following procedure is followed:  (a) such amendment, elimination or change is announced in a writing executed by the Company and made available to currently Participating Employees; and (b) the Participating Employees are given a chance to consider and reject such proposed amendment, elimination or change by filing an objection to the amendment, elimination or change in a writing provided to the Comcast Solutions Program Team, during a 30-day notice and review period regarding the proposed amendment, elimination or change.  If no such objection is filed by the Participating Employee during that notice and review period, the Company's proposed amendment, elimination or change will take effect and will govern any future claims arising under the Program between the Company and the Participating Employee.*

# Attachment F

# Comcast Solutions
# Frequently Asked Questions

### 1.  What is Comcast Solutions?

Comcast Solutions is a three-tiered alternative dispute resolution program specifically designed to effectively and efficiently address certain employment-related claims that assert a violation of law.

Comcast Solutions provides both employees and the Company with multiple opportunities to reach a resolution acceptable to all parties, without expending the time and cost typically associated with traditional, full scale litigation.

If you decided to bring a Case under Comcast Solutions, the three steps of the Comcast Solutions process are:

- **Step 1:  Review/Facilitation.**  Your Case is reviewed by a member of the Comcast Solutions Program team at Cable Corporate Headquarters or at the Divisional level, who will attempt to work with you and your local management team to resolve the complaint internally.
- **Step 2:  Mediation.**  If you are not satisfied with the results of the Review/Facilitation process, you may request that the Case proceed to an outside, professional dispute resolution organization ("DRO") for Mediation.  At this step, a formal mediation (also known as a settlement conference) is held between the parties.
- **Step 3:  Arbitration.**  If Mediation is unsuccessful, you may request that the Case be submitted to the DRO for final, binding Arbitration.  Arbitration is like a mini-trial, where an arbitrator hears witness testimony and reviews the evidence presented and submits a final opinion, which is binding on the parties.

### 2.  What is the difference between Comcast Listens and Comcast Solutions?

Comcast Listens is available for *all* kinds of workplace or integrity issues, big or small, legal and non-legal.  Comcast Solutions is a program created only for certain legal claims affecting your employment, such as allegations of unlawful discrimination based on a protected category, wage and hour violations, and sexual harassment.

### 3.  Will all legal claims be covered by Comcast Solutions?

No.  Certain legal claims, including claims for worker's compensation benefits, unemployment compensation benefits, claims governed by the Employee Retirement Income Security Act ("ERISA") with respect to a company sponsored benefit plan, and claims under the National Labor Relations Act ("NLRA") will not be handled through Comcast Solutions.  (A full list of excluded claims is set forth in greater detail below.)

### 4.  Are all employees in my Region or Business Unit going to be covered by Comcast Solutions?

Not necessarily.  Current employees (*i.e.*, employees who are actively employed on the date that Comcast Solutions is rolled out in their region or business division) will be given the choice to "opt out" of the program if they do not wish to participate.  Employees who are newly hired (or rehired) into the Region or Business Unit *after* the program roll-out date for that Region/Business Unit will be automatically enrolled in the program in consideration of their decision to become employed with the Company.  Excluded from the program are any employees who are subject to a collective bargaining agreement or an employment agreement with the company (unless the agreement specifically references and incorporates the Comcast Solutions program), as these individuals are already subject to an arbitration program/procedure.

**5.  What about pending legal claims? Can I still participate in Comcast Solutions?**

Yes.  Enrollment in Comcast Solutions will only affect claims brought at a future date.  Claims that have already been filed in a court or governmental agency will continue outside of the Comcast Solutions process, even for those who participate in the Comcast Solutions program.

**6.  What happens if I submit a claim to Comcast Solutions that is not eligible for the program?**

If you raise an issue that is not a legal claim or is an excluded legal claim (such as a claim for worker's compensation benefits), you will be so informed and directed to raise the claim in the appropriate forum.  You also will be given the chance to amend your Comcast Solutions case to state a legal claim covered under the program, if applicable.  Non-legal claims that are not covered by Comcast Solutions may be referred to the Comcast Listens program for resolution, if appropriate.

**7.  If I participate in Comcast Solutions, do I waive my right to go to the EEOC, the NLRB, other federal/state/local agencies, and/or to court?**

Comcast Solutions does not affect your right to go to the EEOC or any federal, state or local agency.  You will still be able to do so.  By participating in Comcast Solutions, however, both you and the company are waiving the right to have covered legal claims heard by a judge or jury in a court of law or equity.

**8.  What is the difference between Mediation and Arbitration?**

Mediation is a process where an external, professional mediator tries to get both sides of a dispute (in this case, an employee and the company) to reach a mutually acceptable resolution to the claims.  The mediator does this by reviewing the facts and talking to both sides (the employee and the Company), together and separately, about the claims and the facts of the Case—in an attempt to get them to understand the other side's position and determine a possible resolution that both sides can accept.

Arbitration, in contrast, is like a mini-trial.  An external, professional arbitrator acts as a judge and listens to the evidence presented by both sides, including witness testimony, before making a final, binding determination on the claims in the Case.  The arbitrator can make rulings on procedural or related issues raised by either side.  The arbitrator has the authority to award money damages, attorney's fees and other forms of relief that would be available through a court.  "Binding" arbitration means that both the employee and the company are bound by the final determination of the arbitrator.  This means, absent some kind of abuse of the arbitration process or laws, the outcome must be accepted as final and cannot by challenged by the company or you in court.

**9.  What is a Dispute Resolution Organization (or "DRO")?**

A DRO is an outside, independent entity that offers professional mediation and arbitration services to help resolve legal disputes outside of the local, state or federal court systems.  Professional mediators and arbitrators often include retired judges, attorneys and/or trained professionals.  One of two well-known and very reputable DROs—either Judicial Arbitration and Mediation Services (JAMS) or the American Arbitration Association (AAA)—will be used to resolve mediation and arbitration matters submitted to the Comcast Solutions program, depending on the geographic location of the dispute.  The rules and procedures of both organizations are available through the Comcast Solutions tab on the HR/Benefits page of TeamComcast.  You also may learn more about JAMS and AAA (including getting copies of their rules/procedures) by visiting the following websites:

- **JAMS:**  www.jamsadr.com
- **AAA:**  www.adr.com

Generally, employees working in California, Colorado, Connecticut, Delaware, Florida, Georgia, Illinois, Maryland, Massachusetts, Minnesota, New Hampshire, New Jersey, New York, Pennsylvania, Rhode

Island, Vermont, Virginia and Washington will be covered by JAMS; all others will be covered by AAA. For an updated map of what DRO will apply to your geographic area, as well as the DRO's published procedures and rules, please consult the map available at the Comcast Solutions tab on the HR/Benefits page of TeamComcast.

## 10. Who is eligible for Comcast Solutions?

Full-time and part-time regular employees are eligible for the Comcast Solutions program if they **are not already covered by** an individual employment agreement or by a collective bargaining agreement with the Company.  If an employee is already actively employed by the Company at the time Comcast Solutions is rolled out in his/her Region or Business Unit, he/she is given the choice to opt out of the program.   If he/she opts out of Comcast Solutions, he/she will no longer be eligible to participate in the program.

## 11. Why are individuals with employment agreements or covered by collective bargaining agreements excluded from the Comcast Solutions program?

Employment agreements and collective bargaining agreements at Comcast typically already include an arbitration provision and procedure, which operates under the terms defined by the specific agreement.  Because the employment agreements and collective bargaining agreements already set forth a defined dispute resolution/arbitration procedure, the individuals covered by those agreements will not be covered by Comcast Solutions, unless the employment agreement or collective bargaining agreement specifically incorporates the terms of the Comcast Solutions program.

## 12. What kinds of claims are eligible for resolution through Comcast Solutions?

Most claims that assert a violation of law relating to your employment are eligible for Comcast Solutions (including federal, state or local statutory laws, regulations and/or common law claims). Generally speaking, legal claims covered by the program are claims that involve an allegation that the employee personally has been harmed or damaged by an unlawful action taken by the Company or its representatives related to the employment relationship and are seeking damages or other forms of relief that otherwise would be available through a court.  By way of example, the following is a non-exhaustive list of the types of claims would be covered by Comcast Solutions:

- Claims that a portion of your compensation was wrongfully withheld or not paid and/or that improper deductions were taken;
- Claims that you were discriminated against or harassed based on some characteristic protected by law (*e.g.*, age, disability, gender, national origin, race, religion, veteran status or other legally protected characteristics);
- Claims that you were not provided with appropriate reasonable accommodations and/or were discriminated against on the basis of your disability, the perception of a disability or the disability of someone close to you, as provided under the Americans with Disability Act ("ADA") or other state or local disability laws;
- Claims that you were not provided with reasonable accommodations for your religious beliefs or practices;
- Claims that you were unlawfully retaliated against for previously raising a complaint or claim protected by law (also known as "whistleblower" claims);
- Claims that you were not permitted to take leave under the Family and Medical Leave Act ("FMLA"), under the Uniformed Services Employment and Reemployment Rights Act ("USERRA") or under state/local leave law, as well as claims that you were not reinstated and/or were retaliated against for taking such leave; and
- Claims that you did not receive minimum wage, were not paid overtime and/or were not properly compensated for all of your hours worked in accordance with applicable federal, state or local wage and hour laws.

Legal claims that are <u>excluded from</u> the Comcast Solutions program are the following:

- Unemployment Compensation claims;
- Claims for Workers' Compensation benefits;
- Claims for health and welfare benefits under a Company-sponsored benefit plan covered by the Employee Retirement Income Security Act ("ERISA");
- Claims under the National Labor Relations Act ("NLRA") or under the terms of a collective bargaining agreement;
- Claims under the federal False Claims Act, federal procurement laws or federal or state intellectual property laws (including claims related to patents, trademarks, trade secrets and copyrights);
- Claims for breach of data privacy or unauthorized use or disclosure of private, confidential or trade secret information under statutory or common law; and
- Any claim that is expressly precluded from arbitration by a federal statute or regulation.

You will need to proceed to court and/or the applicable federal, state or local agencies for excluded claims.

### 13. What happens if I submit a Case and it is found to be ineligible for resolution through Comcast Solutions?

If you file a Case with Comcast Solutions that does not assert a legal claim or asserts an excluded legal claim (such as a claim for unemployment compensation benefits), you will be so informed and directed to bring the non-covered claim in the appropriate forum.  You also will be given the chance to amend your Comcast Solutions Case to state a covered legal claim, if applicable.  If a Case is ultimately determined to be ineligible for Comcast Solutions, in whole or in part, the non-covered claims may be referred to the Comcast Listens program for investigation, if appropriate.

### 14. Do I have to go through Comcast Listens before I raise a claim through Comcast Solutions?

While we encourage participation in our Open Door and Comcast Listens programs – including by raising concerns locally to your supervisor, Human Resources or another local manager, to a local Comcast Listens Representative, or through the Comcast Listens phone line/web portal – these steps are not required before raising a claim through Comcast Solutions.

### 15. Do I have to have an attorney in order to participate in Comcast Solutions?

No.  You and the company both are permitted to bring attorneys with you at the mediation and arbitration stages (Steps 2 and 3), but you are not required to retain one or have one present with you.

The Company also will reimburse you for up to $1,500 in attorney's fees for any Case that you bring which proceeds through to arbitration, provided the Case is not determined by the arbitrator to be frivolous.  The arbitrator may also award you full attorney's fees (to be paid by the company), if you prevail on your Case, to the extent permitted by applicable law.

### 16. Will I be able to depose witnesses and collect evidence from the Company?

During the Step 3 Arbitration process, both you and the Company will be able to conduct discovery, including by submitting document requests (to request copies of documents), interrogatories (to ask questions, that will be answered in writing), subpoenas (to obtain information from third parties) and/or deposing witnesses (to ask questions orally, in person).

**17. Do I have to pay anything for the costs of the Dispute Resolution Organization?**

There is no charge for the Review/Facilitation or the Mediation phase.  The company will cover the DRO costs of the Arbitration, with the exception of a $150 Arbitration initiation fee, which you are expected to cover.  (This is less than the typical cost of filing a lawsuit in court.)  If the Arbitrator ultimately rules in your favor, you will be reimbursed by the company for this $150 initiation fee.  (Note:  Neither the mediator nor the arbitrator will be told that the company is paying the full costs of the Mediation and/or Arbitration.)

**18. How does Comcast Solutions affect filings with government agencies?**

Nothing in this program is intended to discourage or interfere with your ability to file administrative claims or charges with government agencies or authorities, such as the Equal Employment Opportunity Commission, the U.S. Department of Labor, the National Labor Relations Board, the Office of Federal Contract Compliance Programs, or other agencies and law enforcement authorities.  Either party, however, may request that an administrative agency or authority defer processing a claim or a charge pending exhaustion of all or some portion of the Comcast Solutions Program, in order to give the program a chance to see if a resolution can be met.  (It will, of course, be up to the agency or authority to decide if it wants to grant such a request.)

**19. Is there a time limit on when I can bring a claim?**

Claims that assert a violation of law must be brought forward in a timely fashion.  This is true when you bring a claim before a court or agency and also when you bring a claim to the Comcast Solutions program.  The "Statute of Limitations" is a legal term that defines how long you have to assert a particular type of legal claim, measured from the date on which the claim first arose.  Statutes of Limitations will vary based on the type of claim raised.  Some Statutes of Limitations are very short (such as for discrimination claims under federal law, which typically need to be brought within 180 or 300 days of the act of discrimination).  You should consult with an attorney regarding any Statute of Limitations that may be applicable to your particular claim.  If you bring a claim late (*i.e.*, after the Statute of Limitations has expired), it may be dismissed by the arbitrator.

For purposes of claims brought under the Comcast Solutions program, the date the Comcast Solutions Program leads first <u>received</u> your initial complaint form (Step 1) is the date that will be used throughout the process for purposes of determining if your claim was brought in a timely fashion.

**20. How do I know if Comcast Solutions is right for my problem?**

Your local HR representative will always be able to guide you to the proper program to have your issue resolved.  You may also call the Comcast Solutions Program Lead, toll-free, at 1-855-838-4180, or email us at Comcast_Solutions@cable.comcast.com with any questions.

**21. What if I did not opt out by the deadline that I was given?  Can I opt out later?**

No.  Once your designated "opt out" period passes, if you did not "opt out," then both you and the company are bound by the Comcast Solutions Program for covered legal claims.

**22. What if I opted out of the program during my designated opt out period and want to opt in later? Can I change my mind about participation?**

No.  If you opt out of the Program during a designated "opt out" period, you will not be considered in the Program.

**23. What if I want to participate in the program, but I currently have a legal claim against the Company that is pending in Court or with a governmental agency?**

That is not a problem.  The Comcast Solutions program will only apply to claims that are brought *after* the roll out of the Comcast Solutions program.  If you have any pending claims that are currently already in a court or agency, these claims will not be affected by the program.

**24. How do I get copies of Comcast Solutions materials or opt out forms if I can't access Team Comcast?**

You can get them by calling your local HR person or the Employee Service Center (ESC) at 1-877-909-HR4U (4748), by emailing Comcast_Solutions@cable.comcast.com or calling the Comcast Solutions team (toll free) at 1-855-838-4180.

# Attachment G

# JAMS EMPLOYMENT ARBITRATION RULES & PROCEDURES

## EFFECTIVE JULY 15, 2009

THE RESOLUTION EXPERTS



# JAMS EMPLOYMENT ARBITRATION RULES & PROCEDURES

JAMS provides arbitration and mediation services from Resolution Centers located throughout the United States. Its arbitrators and mediators hear and resolve some of the nation's largest, most complex and contentious disputes, utilizing JAMS Rules & Procedures as well as the rules of other domestic and international arbitral institutions.

JAMS arbitrators and mediators are full-time neutrals who come from the ranks of retired state and federal judges and prominent attorneys. These highly trained and experienced ADR professionals are dedicated to the highest ethical standards of conduct.

Parties wishing to write a pre-dispute JAMS arbitration clause into their agreement should review the sample arbitration clauses on Page 4. These clauses may be modified to tailor the arbitration process to meet the parties' individual needs.



THE RESOLUTION EXPERTS

# TABLE OF CONTENTS

### Sample Clauses for Use in Employment Dispute Resolution Programs and Contracts

Sample Clause for Mediation Only . . . . . . . . . . . . . . .4

Sample Clause for Mediation and Arbitration . . . . . . .4

Case Management Fees . . . . . . . . . . . . . . . . . . . . . . .5

### JAMS Employment Arbitration Rules & Procedures

Rule 1.  Scope of Rules . . . . . . . . . . . . . . . . . . . . . . .6

Rule 2.  Party-Agreed Procedures . . . . . . . . . . . . . .7

Rule 3.  Amendment of Rules . . . . . . . . . . . . . . . . .7

Rule 4.  Conflict with Law . . . . . . . . . . . . . . . . . . . .7

Rule 5.  Commencing an Arbitration . . . . . . . . . . . .7

Rule 6.  Preliminary and Administrative Matters . . . .8

Rule 7.  Number of Arbitrators and
Appointment of Chairperson . . . . . . . . . .10

Rule 8.  Service . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

Rule 9.  Notice of Claims . . . . . . . . . . . . . . . . . . . .12

Rule 10.  Changes of Claims . . . . . . . . . . . . . . . . . .13

Rule 11.  Interpretation of Rules
and Jurisdictional Challenges . . . . . . . . . .13

Rule 12.  Representation . . . . . . . . . . . . . . . . . . . . .14

Rule 13.  Withdrawal from Arbitration . . . . . . . . . . .14

Rule 14.  *Ex Parte* Communications . . . . . . . . . . . .14

Rule 15.  Arbitrator Selection and Replacement . . . .15

Rule 16.  Preliminary Conference . . . . . . . . . . . . . .17

Rule 17.  Exchange of Information . . . . . . . . . . . . . .17

Rule 18.  Summary Disposition of a Claim or Issue . . 18

Rule 19.  Scheduling and Location of Hearing . . . . .19

Rule 20.  Pre-Hearing Submissions . . . . . . . . . . . . .19

Rule 21.  Securing Witnesses and Documents
for the Arbitration Hearing . . . . . . . . . . . .20

Rule 22.  The Arbitration Hearing . . . . . . . . . . . . . .20

Rule 23.  Waiver of Hearing . . . . . . . . . . . . . . . . . . .22

Rule 24.  Awards . . . . . . . . . . . . . . . . . . . . . . . . . . .22

Rule 25.  Enforcement of the Award . . . . . . . . . . . .24

Rule 26.  Confidentiality and Privacy . . . . . . . . . . . .25

Rule 27.  Waiver . . . . . . . . . . . . . . . . . . . . . . . . . . .25

Rule 28.  Settlement and Consent Award . . . . . . . . .25

Rule 29.  Sanctions . . . . . . . . . . . . . . . . . . . . . . . . .26

Rule 30.  Disqualification of the Arbitrator
as a Witness or Party and
Exclusion of Liability . . . . . . . . . . . . . . . .26

Rule 31.  Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

Rule 32.  Bracketed (or High-Low)
Arbitration Option . . . . . . . . . . . . . . . . . .28

Rule 33.  Final Offer (or Baseball)
Arbitration Option . . . . . . . . . . . . . . . . . .28

Rule 34.  Optional Arbitration Appeal Procedure . . .29

# SAMPLE CLAUSES FOR USE IN EMPLOYMENT DISPUTE RESOLUTION PROGRAMS AND CONTRACTS

The following are basic sample clauses providing for mediation or arbitration in an employment contract. A variety of issues may affect the enforceability or effectiveness of these sample clauses; therefore, it is recommended that you review applicable law in your jurisdiction and consult experienced counsel for advice. The information contained herein should not be considered legal advice or legal opinion. For information about setting a case, call your local JAMS office at 1-800-352-5267.

## Sample Clause for Mediation Only

*Any controversy, dispute or claim arising out of or relating to this [contract] or breach thereof shall first be settled through good faith negotiation [OR company employment program] [other]. If the dispute cannot be settled through negotiation [OR company employment program] [other], the parties agree to attempt in good faith to settle the dispute by mediation administered by JAMS.*

## Sample Clause for Mediation and Arbitration

*Any controversy, dispute or claim arising out of or relating to this [contract] or breach thereof shall first be settled through good faith negotiation [OR company employment program] [other]. If the dispute cannot be settled through negotiation [OR company employment program] [other], the parties agree to attempt in good faith to settle the dispute by mediation administered by JAMS. If the parties are unsuccessful at resolving the dispute through mediation, the parties agree to [binding] arbitration administered by JAMS pursuant to its Employment Arbitration Rules & Procedures and subject to JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness. Judgment on the Award may be entered in any court having jurisdiction.*

# CASE MANAGEMENT FEES

JAMS charges a nominal Case Management Fee. For arbitrations the Case Management Fee is:

**HEARING LENGTH**               **FEE**

1 to 3 days . . . . . . . . . . . . . . .  $400 per party, per day
*(1 day is defined as 10 hours of professional time)*

Time in excess of initial 30 hours . . . . . . . . . . . . 10% of professional fees

JAMS neutrals set their own hourly, partial and full-day rates. For information on individual neutrals' rates and the Case Management Fee, please contact JAMS at 800-352-JAMS. The Case Management Fee structure is subject to change.

All of the JAMS Rules, including the Employment Arbitration Rules set forth below, can be accessed at the JAMS website: **www.jamsadr.com**.

# JAMS EMPLOYMENT ARBITRATION RULES & PROCEDURES

*NOTICE: These Rules are the copyrighted property of JAMS. They cannot be copied, reprinted or used in any way without permission of JAMS, unless they are being used by the parties to an arbitration as the rules for that arbitration. If they are being used as the rules for an arbitration, proper attribution must be given to JAMS. If you wish to obtain permission to use our copyrighted materials, please contact JAMS at 949-224-1810.*

## Rule 1.     Scope of Rules

(a) The JAMS Employment Arbitration Rules & Procedures ("Rules") govern binding Arbitrations of disputes or claims that are administered by JAMS and in which the Parties agree to use these Rules or, in the absence of such agreement, the disputes or claims are employment-related, unless other Rules are prescribed.

(b) The Parties shall be deemed to have made these Rules a part of their Arbitration agreement ("Agreement") whenever they have provided for Arbitration by JAMS under its Employment Rules or for Arbitration by JAMS without specifying any particular JAMS Rules and the disputes or claims meet the criteria of the first paragraph of this Rule.

(c) The authority and duties of JAMS are prescribed in the Agreement of the Parties and in these Rules, and may be carried out through such representatives as it may direct.

(d) JAMS may, in its discretion, assign the administration of an Arbitration to any of its Resolution Centers.

(e) The term "Party" as used in these Rules includes Parties to the Arbitration and their counsel or representatives.

(f) "Electronic filing" (e-file) means the electronic transmission of documents to and from JAMS and other Parties for the purpose of filing via the Internet. "Electronic service" (e-service) means the electronic transmission of documents via JAMS Electronic Filing System to a party, attorney or representative under these Rules.

## Rule 2.     Party-Agreed Procedures

The Parties may agree on any procedures not specified herein or in lieu of these Rules that are consistent with the applicable law and JAMS policies including, without limitation, the JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness, and Rules 15(i), 30 and 31. The Parties shall promptly notify JAMS of any such Party-agreed procedures and shall confirm such procedures in writing. The Party-agreed procedures shall be enforceable as if contained in these Rules.

## Rule 3.     Amendment of Rules

JAMS may amend these Rules without notice. The Rules in effect on the date of the commencement of an Arbitration (as defined in Rule 5) shall apply to that Arbitration, unless the Parties have agreed upon another version of the Rules.

## Rule 4.     Conflict with Law

If any of these Rules, or modification of these Rules agreed on by the Parties, is determined to be in conflict with a provision of applicable law, the provision of law will govern over the Rule in conflict, and no other Rule will be affected.

## Rule 5.     Commencing an Arbitration

(a)  The Arbitration is deemed commenced when JAMS confirms in a Commencement Letter its receipt of one of the following:

   (i)    A post-dispute Arbitration agreement fully executed by all Parties and that specifies JAMS administration or use of any JAMS Rules; or

   (ii)   A pre-dispute written contractual provision requiring the Parties to arbitrate the employment dispute or claim and which specifies JAMS administration or use of any JAMS Rules or which the Parties agree shall be administered by JAMS; or

   (iii)  A written confirmation of an oral agreement of all Parties to participate in an Arbitration administered by JAMS or conducted pursuant to any JAMS Rules; or

   (iv)   A copy of a court order compelling Arbitration at JAMS.

(b)  The Commencement Letter shall confirm which one of the above requirements for commencement has been met, that JAMS has received all payments required under the applicable fee schedule, and that the claimant has

provided JAMS with contact information for all Parties along with evidence that the Demand has been served on all Parties.

(c)  If a Party that is obligated to arbitrate in accordance with subparagraph (a) of this Rule fails to agree to participate in the Arbitration process, JAMS shall confirm in writing that Party's failure to respond or participate and, pursuant to Rule 19, the Arbitrator, once appointed, shall schedule, and provide appropriate notice of a Hearing or other opportunity for the Party demanding the Arbitration to demonstrate its entitlement to relief.

(d)  The date of commencement of the Arbitration is the date of the Commencement Letter, but it is not intended to be applicable to any legal requirements such as the statute of limitations, any contractual limitations period, or claims notice requirements. The term "commencement" as used in this Rule is intended only to pertain to the operation of this and other rules (such as Rule 3, 9(a), 9(c), 13(a), 17(a), 31(a).)

## Rule 6.    Preliminary and Administrative Matters

(a)  JAMS may convene, or the Parties may request, administrative conferences to discuss any procedural matter relating to the administration of the Arbitration.

(b)  If no Arbitrator has yet been appointed, at the request of a Party and in the absence of Party agreement, JAMS may determine the location of the Hearing, subject to Arbitrator review. In determining the location of the Hearing, such factors as the subject matter of the dispute, the convenience of the Parties and witnesses and the relative resources of the Parties shall be considered, but in no event will the Hearing be scheduled in a location that precludes attendance by the Employee.

(c)  If, at any time, any Party has failed to pay fees or expenses in full, JAMS may order the suspension or termination of the proceedings. JAMS may so inform the Parties in order that one of them may advance the required payment. If one Party advances the payment owed by a non-paying Party, the Arbitration shall proceed and the Arbitrator may allocate the non-paying Party's share of such costs, in accordance with Rules 24(f) and 31(c). An administrative suspension shall toll any other time limits contained in these Rules or the Parties' Agreement.

(d)  JAMS does not maintain an official record of documents filed in the Arbitration. If the Parties wish to have any documents returned to them, they must advise JAMS in writing within 30 days of the conclusion of the Arbitration. If special arrangements are required regarding file maintenance or document retention, they must be agreed to in writing and JAMS reserves the right to impose an additional fee for such special arrangements.  Documents that are submitted for e-filing are retained for 30 days following the conclusion of the Arbitration.

(e)  Unless the Parties' agreement or applicable law provides otherwise, JAMS, if it determines that the Arbitrations so filed have common issues of fact or law, may consolidate Arbitrations in the following instances:

(i)   If a Party files more than one Arbitration with JAMS, JAMS may consolidate the Arbitrations into a single arbitration.

(ii)   Where a Demand or Demands for Arbitration is or are submitted naming Parties already involved in another Arbitration or Arbitrations pending under these Rules, JAMS may decide that the new case or cases shall be consolidated into one or more of the pending proceedings and referred to one of the Arbitrators or panels of Arbitrators already appointed.

(iii)   Where a Demand or Demands for Arbitration is or are submitted naming parties that are not identical to the Parties in the existing Arbitration or Arbitrations, JAMS may decide that the new case or cases shall be consolidated into one or more of the pending proceedings and referred to one of the Arbitrators or panels of Arbitrators already appointed.

When rendering its decision, JAMS will take into account all circumstances, including the links between the cases and the progress already made in the existing Arbitrations.

Unless applicable law provides otherwise, where JAMS decides to consolidate a proceeding into a pending Arbitration, the Parties to the consolidated case or cases will be deemed to have waived their right to designate an Arbitrator as well as any contractual provision with respect to the site of the Arbitration.

(f)   Where a third party seeks to participate in an Arbitration already pending under these Rules or where a Party to an Arbitration under these Rules seeks to compel a third party to participate in a pending Arbitration, the Arbitrator shall determine such request, taking into account all circumstances the Arbitrator deems relevant and applicable.

## Rule 7.   Number of Arbitrators and Appointment of Chairperson

(a)   The Arbitration shall be conducted by one neutral Arbitrator unless all Parties agree otherwise. In these Rules, the term "Arbitrator" shall mean, as the context requires, the Arbitrator or the panel of Arbitrators in a tripartite Arbitration.

(b)   In cases involving more than one Arbitrator the Parties shall agree on, or in the absence of agreement JAMS shall designate, the Chairperson of the Arbitration Panel. If the Parties and the Arbitrators agree, a single member of the Arbitration Panel may, acting alone, decide discovery and procedural matters, including the conduct of hearings to receive documents and testimony from third parties who have been subpoenaed to produce documents.

(c)   Where the Parties have agreed that each Party is to name one Arbitrator, the Arbitrators so named shall be neutral and independent of the appointing Party unless the Parties have agreed that they shall be non-neutral.

## Rule 8.   Service

(a)   The Arbitrator may at any time require electronic filing and service of documents in an Arbitration. If an Arbitrator requires electronic filing, the Parties shall maintain and regularly monitor a valid, usable and live email address for the receipt of all documents filed through JAMS Electronic Filing System. Any document filed electronically shall be considered as filed with JAMS when the transmission to JAMS Electronic Filing System is complete. Any document e-filed by 11:59 p.m. (of the sender's time zone) shall be deemed filed on that date. Upon completion of filing, JAMS Electronic Filing System shall issue a confirmation receipt that includes the date and time of receipt. The confirmation receipt shall serve as proof of filing.

(b)   Every document filed with JAMS Electronic Filing System shall be deemed to have been signed by the Arbitrator, Case Manager, attorney or declarant who submits the document to JAMS Electronic Filing System, and shall bear the typed name, address, telephone number, and Bar number of a signing attorney. Documents containing signatures of third-parties (i.e., unopposed motions, affidavits, stipulations, etc.) may also be filed electronically by indicating that the original signatures are maintained by the filing Party in paper-format.

(c)   Delivery of e-service documents through JAMS Electronic Filing System to other registered users shall be considered as valid and effective service and shall have the same legal effect as an original paper document. Recipients of e-service documents shall access their documents through JAMS Electronic Filing System. E-service shall be deemed complete when the party initiating e-service completes the transmission of the electronic document(s) to JAMS Electronic Filing System for e-filing and/or e-service. Upon actual or constructive receipt of the electronic document(s) by the party to be served, a Certificate of Electronic Service shall be issued by JAMS Electronic Filing System to the party initiating e-service and that Certificate shall serve as proof of service. Any party who ignores or attempts to refuse e-service shall be deemed to have received the electronic document(s) 72 hours following the transmission of the electronic document(s) to JAMS Electronic Filing System.

(d)   If an electronic filing or service does not occur because of (1) an error in the transmission of the document to JAMS Electronic Filing System or served Party which was unknown to the sending Party, (2) a failure to process the electronic document when received by JAMS Electronic Filing System, (3) the Party was erroneously excluded from the service list, or (4) other technical problems experienced by the filer, the Arbitrator or JAMS may for good cause shown permit the document to be filed *nunc pro tunc* to the date it was first attempted to be sent electronically. Or, in the case of service, the Party shall, absent extraordinary circumstances, be entitled to an order extending the date for any response or the period within which any right, duty or other act must be performed.

(e)   For documents that are not filed electronically, service by a Party under these Rules is effected by providing one signed copy of the document to each Party and two copies in the case of a sole Arbitrator and four copies in the case of a tripartite panel to JAMS. Service may be made

by hand-delivery, overnight delivery service or U.S. mail. Service by any of these means is considered effective upon the date of deposit of the document. Service by electronic mail or facsimile transmission is considered effective upon transmission, but only if followed within one week of delivery by service of an appropriate number of copies and originals by one of the other service methods.

In computing any period of time prescribed or allowed by these Rules for a Party to do some act within a prescribed period after the service of a notice or other paper on the Party and the notice or paper is served on the Party only by U.S. Mail, three (3) calendar days shall be added to the prescribed period.

## Rule 9.    Notice of Claims

(a)  Each Party shall afford all other Parties reasonable and timely notice of its claims, affirmative defenses or counterclaims. Any such notice shall include a short statement of its factual basis. No claim, remedy, counterclaim, or affirmative defense will be considered by the Arbitrator in the absence of such prior notice to the other Parties, unless the Arbitrator determines that no Party has been unfairly prejudiced by such lack of formal notice or all Parties agree that such consideration is appropriate notwithstanding the lack of prior notice.

(b)  Within fourteen (14) calendar days after the commencement of an Arbitration, Claimant shall submit to JAMS and serve on the other Parties a notice of its claim and remedies sought. Such notice shall consist of either a Demand for Arbitration or a copy of a Complaint previously filed with a court. (In the latter case, Claimant may accompany the Complaint with a copy of any Answer to that Complaint filed by any Respondent.)

(c)  Within fourteen (14) calendar days of service of the notice of claim, a Respondent may submit to JAMS and serve on other Parties a response and must so submit and serve a statement of any affirmative defenses (including jurisdictional challenges) or counterclaims it may have.

(d)  Within fourteen (14) calendar days of service of a counterclaim, a claimant may submit to JAMS and serve on other Parties a response to such counterclaim and must so submit and serve a statement of any affirmative defenses (including jurisdictional challenges) it may have.

(e)  Any claim or counterclaim to which no response has been served will be deemed denied.

## Rule 10.    Changes of Claims

After the filing of a claim and before the Arbitrator is appointed, any Party may make a new or different claim against a Party or any third Party that is subject to Arbitration in the proceeding. Such claim shall be made in writing, filed with JAMS and served on the other Parties. Any response to the new claim shall be made within fourteen (14) calendar days after service of such claim. After the Arbitrator is appointed, no new or different claim may be submitted except with the Arbitrator's approval. A Party may request a Hearing on this issue. Each Party has the right to respond to any new or amended claim in accordance with Rule 9(d).

## Rule 11.    Interpretation of Rules
and Jurisdictional Challenges

(a)  Once appointed, the Arbitrator shall resolve disputes about the interpretation and applicability of these Rules and conduct of the Arbitration Hearing. The resolution of the issue by the Arbitrator shall be final.

(b)  Whenever in these Rules a matter is to be determined by "JAMS" (such as in Rules 6; 11 (d); 15(d), (f), (g) or (i)), such determination shall be made in accordance with JAMS administrative procedures.

(c)  Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. Unless the relevant law requires otherwise, the Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

(d)  Disputes concerning the appointment of the Arbitrator shall be resolved by JAMS.

(e)  The Arbitrator may, upon a showing of good cause or *sua sponte*, when necessary to facilitate the Arbitration, extend any deadlines established in these Rules, provided that the time for rendering the Award may only be altered in accordance with Rules 22(i) or 24.

## Rule 12.   Representation

(a)  The Parties may be represented by counsel or any other person of the Party's choice. Each Party shall give prompt written notice to the Case Manager and the other Parties of the name, address, telephone and fax numbers, and email address of its representative. The representative of a Party may act on the Party's behalf in complying with these Rules.

(b)  Changes in Representation. A Party shall give prompt written notice to the Case Manager and the other Parties of any change in its representation, including the name, address, telephone and fax numbers, and email address of the new representative. Such notice shall state that the written consent of the former representative, if any, and of the new representative, has been obtained and shall state the effective date of the new representation.

## Rule 13.   Withdrawal from Arbitration

(a)  No Party may terminate or withdraw from an Arbitration after the issuance of the Commencement Letter (see Rule 5) except by written agreement of all Parties to the Arbitration.

(b)  A Party that asserts a claim or counterclaim may unilaterally withdraw that claim or counterclaim without prejudice by serving written notice on the other Parties and on the Arbitrator. However, the opposing Parties may, within fourteen (14) calendar days of service of notice of the withdrawal of the claim or counterclaim, request that the Arbitrator order that the withdrawal be with prejudice. If such a request is made, it shall be determined by the Arbitrator.

## Rule 14.   *Ex Parte* Communications

(a) No Party may have any *ex parte* communication with a neutral Arbitrator jointly selected by the Parties. The Arbitrator(s) may authorize any Party to communicate directly with the Arbitrator(s) by email or other written correspondence, so long as copies are simultaneously forwarded to the JAMS Case Manager and the other Parties.

(b)  A Party may have *ex parte* communication with its appointed neutral or non-neutral Arbitrator as necessary to secure the Arbitrator's services and to assure the absence of conflicts and in connection with the selection of the Chairperson of the arbitral panel.

(c)  The Parties may agree to permit more extensive *ex parte* communication between a Party and a non-neutral Arbitrator. More extensive communications with a non-neutral arbitrator may also be permitted by applicable law and rules of ethics.

## Rule 15.   Arbitrator Selection and Replacement

(a)  Unless the Arbitrator has been previously selected by agreement of the Parties, JAMS may attempt to facilitate agreement among the Parties regarding selection of the Arbitrator.

(b)  If the Parties do not agree on an Arbitrator, JAMS shall send the Parties a list of at least five (5) Arbitrator candidates in the case of a sole Arbitrator and ten (10) Arbitrator candidates in the case of a tripartite panel. JAMS shall also provide each Party with a brief description of the background and experience of each Arbitrator candidate. JAMS may replace any or all names on the list of Arbitrator candidates for reasonable cause at any time before the Parties have submitted their choice pursuant to subparagraph (c) below.

(c)  Within seven (7) calendar days of service by the Parties of the list of names, each Party may strike two (2) names in the case of a sole Arbitrator and three (3) names in the case of a tripartite panel, and shall rank the remaining Arbitrator candidates in order of preference. The remaining Arbitrator candidate with the highest composite ranking shall be appointed the Arbitrator. JAMS may grant a reasonable extension of the time to strike and rank the Arbitrator candidates to any Party without the consent of the other Parties.

(d)  If this process does not yield an Arbitrator or a complete panel, JAMS shall designate the sole Arbitrator or as many members of the tripartite panel as are necessary to complete the panel.

(e) If a Party fails to respond to a list of Arbitrator candidates within seven (7) calendar days after its service, JAMS shall deem that Party to have accepted all of the Arbitrator candidates.

(f)   Entities whose interests are not adverse with respect to the issues in dispute shall be treated as a single Party for purposes of the Arbitrator selection process. JAMS shall determine whether the interests between entities are adverse for purposes of Arbitrator selection, considering such factors as whether the entities are represented by the same attorney and whether the entities are presenting joint or separate positions at the Arbitration.

(g)   If, for any reason, the Arbitrator who is selected is unable to fulfill the Arbitrator's duties, a successor Arbitrator shall be chosen in accordance with this Rule. If a member of a panel of Arbitrators becomes unable to fulfill his or her duties after the beginning of a Hearing but before the issuance of an Award, a new Arbitrator will be chosen in accordance with this Rule unless, in the case of a tripartite panel, the Parties agree to proceed with the remaining two Arbitrators. JAMS will make the final determination as to whether an Arbitrator is unable to fulfill his or her duties, and that decision shall be final.

(h)   Any disclosures regarding the selected Arbitrator shall be made as required by law or within ten (10) calendar days from the date of appointment. The obligation of the Arbitrator to make all required disclosures continues throughout the Arbitration process. Such disclosures may be provided in electronic format, provided that JAMS will produce a hard copy to any Party that requests it.

(i)   At any time during the Arbitration process, a Party may challenge the continued service of an Arbitrator for cause. The challenge must be based upon information that was not available to the Parties at the time the Arbitrator was selected. A challenge for cause must be in writing and exchanged with opposing Parties who may respond within seven (7) days of service of the challenge. JAMS shall make the final determination as to such challenge. Such determination shall take into account the materiality of the facts and any prejudice to the Parties. That decision will be final.

(j)   Where the Parties have agreed that a Party-appointed Arbitrator is to be non-neutral, that Party-appointed Arbitrator is not obliged to withdraw if requested to do so only by the party who did not appoint that Arbitrator.

## Rule 16.   Preliminary Conference

At the request of any Party or at the direction of the Arbitrator, a Preliminary Conference shall be conducted with the Parties or their counsel or representatives. The Preliminary Conference may address any or all of the following subjects:

(a)   The exchange of information in accordance with Rule 17 or otherwise;

(b)   The schedule for discovery as permitted by the Rules, as agreed by the Parties or as required or authorized by applicable law;

(c)   The pleadings of the Parties and any agreement to clarify or narrow the issues or structure the Arbitration Hearing;

(d)   The scheduling of the Hearing and any pre-Hearing exchanges of information, exhibits, motions or briefs;

(e)   The attendance of witnesses as contemplated by Rule 21;

(f)   The scheduling of any dispositive motion pursuant to Rule 18;

(g)   The premarking of exhibits; preparation of joint exhibit lists and the resolution of the admissibility of exhibits;

(h)   The form of the Award; and

(i)   Such other matters as may be suggested by the Parties or the Arbitrator.

The Preliminary Conference may be conducted telephonically and may be resumed from time to time as warranted.

## Rule 17.   Exchange of Information

(a) The Parties shall cooperate in good faith in the voluntary and informal exchange of all non-privileged documents and other information (including electronically stored information ("ESI")) relevant to the dispute or claim immediately after commencement of the Arbitration. They shall complete an initial exchange of all relevant, non-privileged documents, including, without limitation, copies of all documents in their possession or control on which

they rely in support of their positions, names of individuals whom they may call as witnesses at the Arbitration Hearing, and names of all experts who may be called to testify at the Arbitration Hearing, together with each expert's report that may be introduced at the Arbitration Hearing, within twenty-one (21) calendar days after all pleadings or notice of claims have been received. The Arbitrator may modify these obligations at the Preliminary Conference.

(b) Each Party may take at least one deposition of an opposing Party or an individual under the control of the opposing Party. The Parties shall attempt to agree on the number, time, location, and duration of the deposition(s). Absent agreement, the Arbitrator shall determine these issues including whether to grant a request for additional depositions, based upon the reasonable need for the requested information, the availability of other discovery, and the burdensomeness of the request on the opposing Parties and witness.

(c) As they become aware of new documents or information, including experts who may be called upon to testify, all Parties continue to be obligated to provide relevant, non-privileged documents, to supplement their identification of witnesses and experts and to honor any informal agreements or understandings between the Parties regarding documents or information to be exchanged. Documents that were not previously exchanged, or witnesses and experts that were not previously identified, may not be considered by the Arbitrator at the Hearing, unless agreed by the Parties or upon a showing of good cause.

(d) The Parties shall promptly notify JAMS when a dispute exists regarding discovery issues. A conference shall be arranged with the Arbitrator, either by telephone or in person, and the Arbitrator shall decide the dispute. With the written consent of all Parties, and in accordance with an agreed written procedure, the Arbitrator may appoint a special master to assist in resolving a discovery dispute.

## Rule 18.    Summary Disposition of a Claim or Issue

The Arbitrator may permit any Party to file a Motion for Summary Disposition of a particular claim or issue, either by agreement of all interested Parties or at the request of one Party, provided other interested Parties have reasonable notice to respond to the motion.

## Rule 19.    Scheduling and Location of Hearing

(a) The Arbitrator, after consulting with the Parties that have appeared, shall determine the date, time and location of the Hearing. The Arbitrator and the Parties shall attempt to schedule consecutive Hearing days if more than one day is necessary.

(b) If a Party has failed to participate in the Arbitration process, and the Arbitrator reasonably believes that the Party will not participate in the Hearing, the Arbitrator may set the Hearing without consulting with that Party. The non-participating Party shall be served with a Notice of Hearing at least thirty (30) calendar days prior to the scheduled date unless the law of the relevant jurisdiction allows for or the Parties have agreed to shorter notice.

(c) The Arbitrator, in order to hear a third party witness, or for the convenience of the Parties or the witnesses, may conduct the Hearing at any location. Any JAMS Resolution Center may be designated a Hearing location for purposes of the issuance of a subpoena or subpoena *duces tecum* to a third party witness.

## Rule 20.    Pre-Hearing Submissions

(a) Except as set forth in any scheduling order that may be adopted, at least fourteen (14) calendar days before the Arbitration Hearing, the Parties shall file with JAMS and serve and exchange (1) a list of the witnesses they intend to call, including any experts, (2) a short description of the anticipated testimony of each such witness and an estimate of the length of the witness' direct testimony, and (3) a list of all exhibits intended to be used at the Hearing. The Parties should exchange with each other a copy of any such exhibits to the extent that it has not been previously exchanged. The Parties should pre-mark exhibits and shall attempt to resolve any disputes regarding the admissibility of exhibits prior to the Hearing.

(b) The Arbitrator may require that each Party submit concise written statements of position, including summaries of the facts and evidence a Party intends to present, discussion of the applicable law and the basis for the requested Award or denial of relief sought. The statements, which may be in the form of a letter, shall be filed with JAMS and served upon the other Parties, at least seven (7) calendar days before the Hearing date. Rebuttal statements or

other pre-Hearing written submissions may be permitted or required at the discretion of the Arbitrator.

## Rule 21.   Securing Witnesses and Documents for the Arbitration Hearing

At the written request of a Party, all other Parties shall produce for the Arbitration Hearing all specified witnesses in their employ or under their control without need of subpoena. The Arbitrator may issue subpoenas for the attendance of witnesses or the production of documents either prior to or at the Hearing pursuant to this Rule or Rule 19(c). The subpoena or subpoena *duces tecum* shall be issued in accordance with the applicable law. Pre-issued subpoenas may be used in jurisdictions that permit them. In the event a Party or a subpoenaed person objects to the production of a witness or other evidence, the Party or subpoenaed person may file an objection with the Arbitrator, who shall promptly rule on the objection, weighing both the burden on the producing Party and witness and the need of the proponent for the witness or other evidence.

## Rule 22.   The Arbitration Hearing

(a)   The Arbitrator will ordinarily conduct the Arbitration Hearing in the manner set forth in these Rules. The Arbitrator may vary these procedures if it is determined reasonable and appropriate to do so. It is expected that the Employee will attend the Arbitration Hearing, as will any other individual Party with information about a significant issue.

(b)   The Arbitrator shall determine the order of proof, which will generally be similar to that of a court trial.

(c)   The Arbitrator shall require witnesses to testify under oath if requested by any Party, or otherwise in the discretion of the Arbitrator.

(d)   Strict conformity to the rules of evidence is not required, except that the Arbitrator shall apply applicable law relating to privileges and work product. The Arbitrator shall consider evidence that he or she finds relevant and material to the dispute, giving the evidence such weight as is appropriate. The Arbitrator may be guided in that determination by principles contained in the Federal Rules of Evidence or any other applicable rules of evidence. The Arbitrator may limit testimony to exclude evidence that

would be immaterial or unduly repetitive, provided that all Parties are afforded the opportunity to present material and relevant evidence.

(e)   The Arbitrator shall receive and consider relevant deposition testimony recorded by transcript or videotape, provided that the other Parties have had the opportunity to attend and cross-examine. The Arbitrator may in his or her discretion consider witness affidavits or other recorded testimony even if the other Parties have not had the opportunity to cross-examine, but will give that evidence only such weight as the Arbitrator deems appropriate.

(f) The Parties will not offer as evidence, and the Arbitrator shall neither admit into the record nor consider, prior settlement offers by the Parties or statements or recommendations made by a mediator or other person in connection with efforts to resolve the dispute being arbitrated, except to the extent that applicable law permits the admission of such evidence.

(g)   The Hearing or any portion thereof may be conducted telephonically with the agreement of the Parties or in the discretion of the Arbitrator.

(h)   When the Arbitrator determines that all relevant and material evidence and arguments have been presented, and any interim or partial awards have been issued, the Arbitrator shall declare the Hearing closed. The Arbitrator may defer the closing of the Hearing until a date agreed upon by the Arbitrator and the Parties, to permit the Parties to submit post-Hearing briefs, which may be in the form of a letter, and/or to make closing arguments. If post-Hearing briefs are to be submitted, or closing arguments are to be made, the Hearing shall be deemed closed upon receipt by the Arbitrator of such briefs or at the conclusion of such closing arguments.

(i)   At any time before the Award is rendered, the Arbitrator may, *sua sponte* or on application of a Party for good cause shown, re-open the Hearing. If the Hearing is re-opened and the re-opening prevents the rendering of the Award within the time limits specified by these Rules, the time limits will be extended until the reopened Hearing is declared closed by the Arbitrator.

(j)   The Arbitrator may proceed with the Hearing in the absence of a Party that, after receiving notice of the Hearing pursuant to Rule 19, fails to attend. The Arbitrator may

not render an Award solely on the basis of the default or absence of the Party, but shall require any Party seeking relief to submit such evidence as the Arbitrator may require for the rendering of an Award. If the Arbitrator reasonably believes that a Party will not attend the Hearing, the Arbitrator may schedule the Hearing as a telephonic Hearing and may receive the evidence necessary to render an Award by affidavit. The notice of Hearing shall specify if it will be in person or telephonic.

(k)  (i)    Any Party may arrange for a stenographic or other record to be made of the Hearing and shall inform the other Parties in advance of the Hearing. The requesting Party shall bear the cost of such stenographic record. If all other Parties agree to share the cost of the stenographic record, it shall be made available to the Arbitrator and may be used in the proceeding.

(ii)    If there is no agreement to share the cost, the stenographic record may not be provided to the Arbitrator and may not be used in the proceeding unless the Party arranging for the stenographic record either agrees to provide access to the stenographic record at no charge or on terms that are acceptable to the Parties and the reporting service.

(iii)    If the Parties agree to an Optional Arbitration Appeal Procedure (see Rule 34), they shall ensure that a stenographic or other record is made of the Hearing.

(iv)    The Parties may agree that the cost of the stenographic record shall or shall not be allocated by the Arbitrator in the Award.

## Rule 23.    Waiver of Hearing

The Parties may agree to waive the oral Hearing and submit the dispute to the Arbitrator for an Award based on written submissions and other evidence as the Parties may agree.

## Rule 24.    Awards

(a)  The Arbitrator shall render a Final Award or a Partial Final Award within thirty (30) calendar days after the date of the close of the Hearing as defined in Rule 22(h) or, if a Hearing has been waived, within thirty (30) calendar days after the receipt by the Arbitrator of all materials specified by the Parties, except (i) by the agreement of the Parties, (ii) upon good cause for an extension of time to render the Award, or (iii) as provided in Rule 22(i). The Arbitrator shall provide the Final Award or the Partial Final Award to JAMS for issuance in accordance with this Rule.

(b)  Where a panel of Arbitrators has heard the dispute, the decision and Award of a majority of the panel shall constitute the Arbitration Award.

(c)  In determining the merits of the dispute the Arbitrator shall be guided by the rules of law agreed upon by the Parties. In the absence of such agreement, the Arbitrator will be guided by the law or the rules of law that the Arbitrator deems to be most appropriate. The Arbitrator may grant any remedy or relief that is just and equitable and within the scope of the Parties' agreement, including but not limited to specific performance of a contract or any other equitable or legal remedy.

(d)  In addition to a Final Award or Partial Final Award, the Arbitrator may make other decisions, including interim or partial rulings, orders and Awards.

(e)  Interim Measures. The Arbitrator may grant whatever interim measures are deemed necessary, including injunctive relief and measures for the protection or conservation of property and disposition of disposable goods. Such interim measures may take the form of an interim Award, and the Arbitrator may require security for the costs of such measures. Any recourse by a Party to a court for interim or provisional relief shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.

(f)  The Award of the Arbitrator may allocate Arbitration fees and Arbitrator compensation and expenses unless such an allocation is expressly prohibited by the Parties' agreement or by applicable law. (Such a prohibition may not limit the power of the Arbitrator to allocate Arbitration fees and Arbitrator compensation and expenses pursuant to Rule 31(c)).

(g)  The Award of the Arbitrator may allocate attorneys' fees and expenses and interest (at such rate and from such date as the Arbitrator may deem appropriate) if provided by the Parties' agreement or allowed by applicable law.

(h)  The Award will consist of a written statement signed by the Arbitrator regarding the disposition of each claim and the relief, if any, as to each claim. The Award shall also contain a concise written statement of the reasons for the

Award, stating the essential findings and conclusions on which the award is based. The Parties may agree to any other form of award, unless the arbitration is based on an arbitration agreement that is required as a condition of employment.

(i)  After the Award has been rendered, and provided the Parties have complied with Rule 31, the Award shall be issued by serving copies on the Parties. Service may be made by U.S. Mail. It need not be sent certified or registered.

(j)  Within seven (7) calendar days after service of the Award by JAMS, any Party may serve upon the other Parties and on JAMS a request that the Arbitrator correct any computational, typographical or other similar error in an Award (including the reallocation of fees pursuant to Rule 31), or the Arbitrator may *sua sponte* propose to correct such errors in an Award. A Party opposing such correction shall have seven (7) calendar days thereafter in which to file any objection. The Arbitrator may make any necessary and appropriate correction to the Award within twenty-one (21) calendar days of receiving a request or fourteen (14) calendar days after the Arbitrator's proposal to do so. The Arbitrator may extend the time within which to make corrections upon good cause. The corrected Award shall be served upon the Parties in the same manner as the Award.

(k)  The Award is considered final, for purposes of either an Optional Arbitration Appeal Procedure pursuant to Rule 34 or a judicial proceeding to enforce, modify or vacate the Award pursuant to Rule 25, fourteen (14) calendar days after service is deemed effective if no request for a correction is made, or as of the effective date of service of a corrected Award.

## Rule 25.    Enforcement of the Award

Proceedings to enforce, confirm, modify or vacate an Award will be controlled by and conducted in conformity with the Federal Arbitration Act, 9 U.S.C. Sec 1 *et seq.* or applicable state law. The Parties to an Arbitration under these Rules shall be deemed to have consented that judgment upon the Award may be entered in any court having jurisdiction thereof.

## Rule 26.    Confidentiality and Privacy

(a)  JAMS and the Arbitrator shall maintain the confidential nature of the Arbitration proceeding and the Award, including the Hearing, except as necessary in connection with a judicial challenge to or enforcement of an Award, or unless otherwise required by law or judicial decision.

(b)  The Arbitrator may issue orders to protect the confidentiality of proprietary information, trade secrets or other sensitive information.

(c)  Subject to the discretion of the Arbitrator or agreement of the Parties, any person having a direct interest in the Arbitration may attend the Arbitration Hearing. The Arbitrator may exclude any non-Party from any part of a Hearing.

## Rule 27.    Waiver

(a)  If a Party becomes aware of a violation of or failure to comply with these Rules and fails promptly to object in writing, the objection will be deemed waived, unless the Arbitrator determines that waiver will cause substantial injustice or hardship.

(b)  If any Party becomes aware of information that could be the basis of a challenge for cause to the continued service of the Arbitrator, such challenge must be made promptly, in writing, to the Arbitrator or JAMS. Failure to do so shall constitute a waiver of any objection to continued service by the Arbitrator.

## Rule 28.    Settlement and Consent Award

(a)  The Parties may agree, at any stage of the Arbitration process, to submit the case to JAMS for mediation. The JAMS mediator assigned to the case may not be the Arbitrator or a member of the Appeal Panel, unless the Parties so agree pursuant to Rule 28(b).

(b)  The Parties may agree to seek the assistance of the Arbitrator in reaching settlement. By their written agreement to submit the matter to the Arbitrator for settlement assistance, the Parties will be deemed to have agreed that the assistance of the Arbitrator in such settlement efforts will not disqualify the Arbitrator from continuing to serve as Arbitrator if settlement is not reached; nor shall such

assistance be argued to a reviewing court as the basis for vacating or modifying an Award.

(c) If, at any stage of the Arbitration process, all Parties agree upon a settlement of the issues in dispute and request the Arbitrator to embody the agreement in a Consent Award, the Arbitrator shall comply with such request unless the Arbitrator believes the terms of the agreement are illegal or undermine the integrity of the Arbitration process. If the Arbitrator is concerned about the possible consequences of the proposed Consent Award, he or she shall inform the Parties of that concern and may request additional specific information from the Parties regarding the proposed Consent Award. The Arbitrator may refuse to enter the proposed Consent Award and may withdraw from the case.

## Rule 29.    Sanctions

The Arbitrator may order appropriate sanctions for failure of a Party to comply with its obligations under any of these Rules. These sanctions may include, but are not limited to, assessment of Arbitration fees and Arbitrator compensation and expenses, any other costs occasioned by the actionable conduct including reasonable attorney's fees, exclusion of certain evidence, drawing adverse inferences, or in extreme cases determining an issue or issues submitted to Arbitration adversely to the Party that has failed to comply.

## Rule 30.    Disqualification of the Arbitrator as a Witness or Party and Exclusion of Liability

(a)  The Parties may not call the Arbitrator, the Case Manager or any other JAMS employee or agent as a witness or as an expert in any pending or subsequent litigation or other proceeding involving the Parties and relating to the dispute that is the subject of the Arbitration. The Arbitrator, Case Manager and other JAMS employees and agents are also incompetent to testify as witnesses or experts in any such proceeding.

(b)  The Parties shall defend and/or pay the cost (including any attorneys' fees) of defending the Arbitrator, Case Manager and/or JAMS from any subpoenas from outside Parties arising from the Arbitration.

(c)  The Parties agree that neither the Arbitrator, Case Manager nor JAMS is a necessary Party in any litigation or other proceeding relating to the Arbitration or the subject matter of the Arbitration, and neither the Arbitrator, Case Manager nor JAMS, including its employees or agents, shall be liable to any Party for any act or omission in connection with any Arbitration conducted under these Rules, including but not limited to any disqualification of or recusal by the Arbitrator.

## Rule 31.    Fees

(a)  Except as provided in paragraph (c) below, unless the Parties have agreed to a different allocation, each Party shall pay its *pro-rata* share of JAMS fees and expenses as set forth in the JAMS fee schedule in effect at the time of the commencement of the Arbitration. To the extent possible, the allocation of such fees and expenses shall not be disclosed to the Arbitrator. JAMS agreement to render services is jointly with the Party and the attorney or other representative of the Party in the Arbitration. The non-payment of fees may result in an administrative suspension of the case in accordance with Rule 6(c).

(b)  JAMS requires that the Parties deposit the fees and expenses for the Arbitration prior to the Hearing and the Arbitrator may preclude a Party that has failed to deposit its *pro-rata* or agreed-upon share of the fees and expenses from offering evidence of any affirmative claim at the Hearing.

(c) If an arbitration is based on a clause or agreement that is required as a condition of employment, the only fee that an employee may be required to pay is the initial JAMS Case Management Fee. JAMS does not preclude an employee from contributing to administrative and arbitrator fees and expenses. If an arbitration is not based on a clause or agreement that is required as a condition of employment, the Parties are jointly and severally liable for the payment of JAMS Arbitration fees and Arbitrator compensation and expenses. In the event that one Party has paid more than its share of such fees, compensation and expenses, the Arbitrator may award against any other Party any such fees, compensation and expenses that such Party owes with respect to the Arbitration.

(d)  Entities whose interests are not adverse with respect to the issues in dispute shall be treated as a single Party for

purposes of JAMS assessment of fees. JAMS shall determine whether the interests between entities are adverse for purpose of fees, considering such factors as whether the entities are represented by the same attorney and whether the entities are presenting joint or separate positions at the Arbitration.

## Rule 32.    Bracketed (or High-Low) Arbitration Option

(a)  At any time before the issuance of the Arbitration Award, the Parties may agree, in writing, on minimum and maximum amounts of damages that may be awarded on each claim or on all claims in the aggregate. The Parties shall promptly notify JAMS, and provide to JAMS a copy of their written agreement setting forth the agreed-upon maximum and minimum amounts.

(b)  JAMS shall not inform the Arbitrator of the agreement to proceed with this option or of the agreed-upon minimum and maximum levels without the consent of the Parties.

(c)  The Arbitrator shall render the Award in accordance with Rule 24.

(d)  In the event that the Award of the Arbitrator is between the agreed-upon minimum and maximum amounts, the Award shall become final as is. In the event that the Award is below the agreed-upon minimum amount, the final Award issued shall be corrected to reflect the agreed-upon minimum amount. In the event that the Award is above the agreed-upon maximum amount, the final Award issued shall be corrected to reflect the agreed-upon maximum amount.

## Rule 33.    Final Offer (or Baseball) Arbitration Option

(a)  Upon agreement of the Parties to use the option set forth in this Rule, at least seven (7) calendar days before the Arbitration Hearing, the Parties shall exchange and provide to JAMS written proposals for the amount of money damages they would offer or demand, as applicable, and that they believe to be appropriate based on the standard set forth in Rule 24(c). JAMS shall promptly provide a copy of the Parties' proposals to the Arbitrator, unless the Parties agree that they should not be provided to the Arbitrator. At any time prior to the close of the Arbitration Hearing,

the Parties may exchange revised written proposals or demands, which shall supersede all prior proposals. The revised written proposals shall be provided to JAMS, which shall promptly provide them to the Arbitrator, unless the Parties agree otherwise.

(b)  If the Arbitrator has been informed of the written proposals, in rendering the Award the Arbitrator shall choose between the Parties' last proposals, selecting the proposal that the Arbitrator finds most reasonable and appropriate in light of the standard set forth in Rule 24(c). This provision modifies Rule 24(h) in that no written statement of reasons shall accompany the Award.

(c)  If the Arbitrator has not been informed of the written proposals, the Arbitrator shall render the Award as if pursuant to Rule 24, except that the Award shall thereafter be corrected to conform to the closest of the last proposals, and the closest of the last proposals will become the Award.

(d)  Other than as provided herein, the provisions of Rule 24 shall be applicable.

## Rule 34.    Optional Arbitration Appeal Procedure

At any time before the Award becomes final pursuant to Rule 24, the Parties may agree to the JAMS Optional Arbitration Appeal Procedure. All Parties must agree in writing for such procedure to be effective. Once a Party has agreed to the Optional Arbitration Appeal Procedure, it cannot unilaterally withdraw from it, unless it withdraws, pursuant to Rule 13, from the Arbitration.

1.800.352.JAMS | www.jamsadr.com

© Copyright 2009 JAMS. All rights reserved.

# Attachment H

Code of Conduct Employee Handbook 2017: | Code of Co |
Employee: | Bush, Pres |

| Additional data for Employee | |
|---|---|
| Full Name | Bush, Prestine, N |
| Personnel No. | 10318280 |
| Org. Unit | CUSTSRVC0982 |
| Personnel area | CCC-PA |
| Pers. subarea | Three Rivers |

Validity Period: | 01/01/2017 |   To : | 12/31/2017 |

Exit  Action Log

**Comcast Code of Conduct and Employee Handbook**

***ACKNOWLEDGMENT***

**Please read the following documents in their entirety and then complete the Acknowledgment below. If you have any questions, please contact your Human Resources representative.**

**Step 1: Read the Code of Conduct and Employee Handbook**
**Click here to read the Comcast Corporation Code of Conduct (the "Code of Conduct").**
**Click here to read the Employee Handbook applicable to you.**

**Step 2: Complete the Acknowledgment:**

**By clicking "I acknowledge," I acknowledge that I have read and I understand the Code of Conduct and the Employee Handbook and all related policies, including the Securities, IT & Facilities Policies, the Communications Policies and the Comcast Solutions Policy. I understand that I can find the Code of Conduct, the Employee Handbook and related policies on ComcastNow and that I can receive a hard copy of the Code of Conduct, the Employee Handbook and related policies by contacting Human Resources.**

**I understand that the Code of Conduct and Employee Handbook and all related policies including, but not limited to, the Harassment Policy, the Open Door Policy, the Comcast Solutions Policy, the Securities, IT & Facilities Policies and the Communications Policies provide information concerning my employment, as well as the duties, responsibilities and obligations of employment with Comcast. I understand and agree to abide by the policies, rules and standards set forth in these documents, including, but not limited to, the obligation to cooperate in good faith with any internal investigation of violations of the Code of Conduct, Employee Handbook and related policies. I also understand that employees who violate the Code of Conduct, the Employee Handbook and/or related policies are subject to disciplinary action, up to and including immediate termination of employment.**

**Unless I am not participating in Comcast Solutions because I (i) previously "opted out" of the program during the program roll out period, or (ii) am covered by a collective bargaining agreement or an authorized employment agreement which does not include participation in Comcast Solutions, I understand that the Comcast Solutions Program is a mutually-binding contract between me and Comcast and that my continued employment with Comcast is confirmation that I am bound by the terms of the Comcast Solutions Program. Further information about the Comcast Solutions Program -- including the Program Guide, Frequently Asked Questions, and various Program forms (including the Initial Filing form) -- is available for me to review on ComcastNow.**

**With the exception of the Comcast Solutions Program (which may only be changed in accordance with the provisions of the Program Guide), I understand that Comcast may change or revise the Code of Conduct, the Employee Handbook and related policies at any time in its sole discretion and without advance notice. I also understand that nothing in the Code of Conduct, the Employee Handbook and related policies creates a**

contract of guaranteed employment for any specific period of time. Unless I have a fully-executed Employment Agreement for a defined period of time, I understand that my employment with Comcast is at will and that Comcast may end my employment at any time, with or without advance notice, for any reason not prohibited by law. Likewise, I may end my employment with Comcast at any time with or without advance notice.

I understand that if there is a difference between what is stated in the Code of Conduct, the Employee Handbook (including all related policies referenced in the Employee Handbook), or this Acknowledgment, and any applicable policies, benefit plan documents, or other written and authorized agreements (including collective bargaining agreements), then the applicable policies, benefit plan documents, and agreements will govern.

By clicking "I acknowledge," I also certify that (i) I am in compliance with the Code of Conduct, (ii) I have disclosed and, if required, obtained approval, of every circumstance where disclosure and/or approval is required under the Code of Conduct, and (iii) I have reported all potential Code of Conduct violations of which I am aware. I understand that if I click "I do not acknowledge" and disclose an exception below, I am still obligated to abide by all rules, policies, and standards set forth in the Code of Conduct and Employee Handbook (and all related policies) and am still bound by the Comcast Solutions Policy. In addition, I understand that Comcast may not accept or approve the disclosed exception.

**Employee Acknowledgment**

☑ I acknowledge

☐ I do not acknowledge

If you have clicked "I do not acknowledge," please provide details in the box below:

To print your completed Acknowledgment, right click on your mouse and select Print.

To submit your completed Acknowledgment, click the "Submit" button at the top of the page, and then click the "Exit" button to close the window.

| 02/20/2017 | 16:17 | PBUSH200 | Appraisal document displayed | |
|---|---|---|---|---|
| 02/20/2017 | 16:18 | PBUSH200 | Appraisal document displayed | |
| 02/20/2017 | 16:19 | PBUSH200 | Final appraisal of Criterion 'Acknowledgment' entered | |
| 02/20/2017 | 16:19 | PBUSH200 | Appraisal document status set to 'Completed' | |
| 08/04/2017 | 18:41 | PBUSH200 | Appraisal document displayed | |
| 08/04/2017 | 18:41 | PBUSH200 | Appraisal document displayed | |



# Code of Conduct / Employee Handbook Acknowledgment

| Name: | Prestine Bush | PERNR: | 10318280 |
|---|---|---|---|
| 2018 Code of Conduct / Handbook Acknowledgment | | Completed: | 3/30/2018 12:37 PM America/ New_York |

Please read the following documents in their entirety and then complete the Acknowledgment below. If you have any questions, please contact your Human Resources representative.

**Step 1: Read the Code of Conduct and Employee Handbook**
Read the Comcast Corporation Code of Conduct (the "Code of Conduct").
Read the Employee Handbook applicable to you.

**Step 2: Complete the Acknowledgment:**
By clicking "I acknowledge," I acknowledge that I have read and I understand the Code of Conduct and the Employee Handbook and all related policies, including the Securities, IT & Facilities Policies, the Communications Policies and the Comcast Solutions Policy. I understand that I can find the Code of Conduct, the Employee Handbook and related policies on ComcastNow and that I can receive a hard copy of the Code of Conduct, the Employee Handbook and related policies by contacting Human Resources.

I understand that the Code of Conduct and Employee Handbook and all related policies including, but not limited to, the Harassment Policy, the Open Door Policy, the Comcast Solutions Policy, the Securities, IT & Facilities Policies and the Communications Policies provide information concerning my employment, as well as the duties, responsibilities and obligations of employment with Comcast. I understand and agree to abide by the policies, rules and standards set forth in these documents, including, but not limited to, the obligation to cooperate in good faith with any internal investigation of violations of the Code of Conduct, Employee Handbook and related policies. I also understand that employees who violate the Code of Conduct, the Employee Handbook and/or related policies are subject to disciplinary action, up to and including immediate termination of employment.

Unless I am not participating in Comcast Solutions because I (i) previously "opted out" of the program during the program roll out period, or (ii) am covered by a collective bargaining agreement or an authorized employment agreement which does not include participation in Comcast Solutions, I understand that the Comcast Solutions Program is a mutually-binding contract between me and Comcast and that my continued employment with Comcast is confirmation that I am bound by the terms of the Comcast Solutions Program. Further information about the Comcast Solutions Program -- including the Program Guide, Frequently Asked Questions, and various Program forms (including the Initial Filing form) -- is available for me to review on ComcastNow.

With the exception of the Comcast Solutions Program (which may only be changed in accordance with the provisions of the Program Guide), I understand that Comcast may change or revise the Code of Conduct, the Employee Handbook and related policies at any time in its sole discretion and without advance notice. I also understand that nothing in the Code of Conduct, the Employee Handbook and related policies creates a contract of guaranteed



# Code of Conduct / Employee Handbook Acknowledgment

employment for any specific period of time. Unless I have a fully-executed Employment Agreement for a defined period of time, I understand that my employment with Comcast is at will and that Comcast may end my employment at any time, with or without advance notice, for any reason not prohibited by law. Likewise, I may end my employment with Comcast at any time with or without advance notice.

I understand that if there is a difference between what is stated in the Code of Conduct, the Employee Handbook (including all related policies referenced in the Employee Handbook), or this Acknowledgment, and any applicable policies, benefit plan documents, or other written and authorized agreements (including collective bargaining agreements), then the applicable policies, benefit plan documents, and agreements will govern.

By clicking "I acknowledge," I also certify that (i) I am in compliance with the Code of Conduct, (ii) I have disclosed and, if required, obtained approval, of every circumstance where disclosure and/or approval is required under the Code of Conduct, and (iii) I have reported all potential Code of Conduct violations of which I am aware. I understand that if I click "I do not acknowledge" and disclose an exception below, I am still obligated to abide by all rules, policies, and standards set forth in the Code of Conduct and Employee Handbook (and all related policies) and am still bound by the Comcast Solutions Policy. In addition, I understand that Comcast may not accept or approve the disclosed exception.

| Employee Acknowledgment |
| --- |
| **I ACKNOWLEDGE** |

If no results are displayed, the Code of Conduct / Handbook Acknowledgment was not completed for 2018 or later. You can find any completed Code of Conduct / Handbook Acknowledgment(s) from 2017 and earlier in **Performance Management** in Employee Self-Service.

# EXHIBIT C

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PRESTINE BUSH, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.: 2:19-cv-01004-NR |
| | : | |
| COMCAST CABLE COMMUNICATIONS | : | |
| MANAGEMENT, LLC, COMCAST | : | |
| CABLE COMMUNICATIONS, LLC, AND | : | |
| COMCAST CORPORATION | : | |
| | : | |
| Defendants. | : | |

### VERIFIED STATEMENT OF LINDSAY HINKLE

I, Lindsay Hinkle, hereby declare that the statements made in this Verified Statement pursuant to 28 U.S.C. § 1746, are true and correct to the best of my knowledge and belief. I understand that false statements made herein are subject to the penalties of perjury and state as follows:

1.      I am currently employed by Comcast as Principal, HR Digital Technology Strategy. My previous position with Comcast was Senior Specialist of HR Systems and Technology.

2.      In 2016, Comcast developed and rolled out an online new hire onboarding system called the Comcast Welcome Portal (the "Welcome Portal").

3.      I have been directly involved in various aspects of the Welcome Portal since its roll-out at Comcast in April 2016. My main job function as Senior Specialist of HR Systems and Technology was to support the Welcome Portal. In that role, I led the day-to-day administration of the Welcome Portal. I am the subject matter expert at Comcast for all Welcome Portal related matters.

4.       Since April 2016, Comcast has used the Welcome Portal to onboard new hires. New hires are required to access the Welcome Portal in order to view offer letters and other related information and to formally accept or decline offers of employment.

5.       After being verbally informed of a job offer, new hires receive an email from Comcast, which is sent to the email address used to apply for the position. The email from Comcast contains a link and a temporary password to access the Welcome Portal.

6.       After a new hire logs into the Welcome Portal with the temporary password, the new hire is prompted to create a new personal password, which he or she can use to access the Welcome Portal in the future.

7.       When a new hire accesses the Welcome Portal, the new hire is able to view and electronically sign his or her offer letter. The Welcome Portal also includes links to important on-boarding documents referenced in the offer letter.

8.       In order to electronically sign the offer letter, a new hire must select between two buttons at the bottom of the offer letter on the Welcome Portal: "I Accept" or "I Decline."

9.       Once the new hire selects the "I Accept" button, they must type their name in a signature box. After signing the offer letter, the candidate has the option to (1) save and complete later; (2) save and submit; or (3) cancel. For the offer letter acceptance task to be completed and in order to continue on to additional onboarding tasks (*i.e.* completing the I-9 process), the new hire must select "save and submit."

10.     The date and time on which a new hire electronically signs an offer letter is electronically stored on the PDF version of the offer letter. The signed offer letter is not submitted to Comcast until the new hire clicks "save and submit" on the Welcome Portal.

11.     On January 24, 2017, Comcast notified Ms. Bush, via email, that her offer letter was ready for her to review on the Comcast Welcome portal. The email to Ms. Bush was triggered by Colleen Condran, a member of Comcast's recruiting team. Attachment A is a screenshot of the record I used to confirm this information. It is Comcast's regular practice to generate and preserve the records that are reflected in Attachment A. Specifically, the Item "Event:New Hire Onboarding Task: Offer Letter Hourly External Regular - QA" (second row from the bottom) indicates that Ms. Condran completed this task, triggering the subsequent task, "Event:New Hire Onboarding Task: Email Notification- Offer Letter Issued to Candidate" (third row from the bottom), which means that an email would be sent to the email address included in Ms. Bush's application for employment.

12.     Attachment A also shows that the individual logged into the system under Ms. Bush's credentials and completed Ms. Bush's Form I-9 Section 1 on January 25, 2017 (first row).

13.     In order to complete Section 1 of the Form I-9, Ms. Bush was required to included her name, address, date of birth, social security number, email (prestineb@yahoo.com), and her telephone number.

14.     As with all offer letter emails generated by the Welcome Portal system, the email to Ms. Bush directed her to the Welcome Portal to review her offer letter and other important documents, and provided her a temporary password to access the Welcome Portal.

15.     The Welcome Portal does not store individual copies of these emails to new hires. However, the template that we use for offer letter emails is attached here as Attachment B.

16.     In order to view her offer letter, Ms. Bush would have had to follow the link to the Welcome Portal provided in the email, log into the Welcome Portal with her email address

and the temporary password provided in that email. She then would have created a new personal password that she would use to access the Welcome Portal going forward.

17.    Comcast's Welcome Portal records, which are kept in the course of regularly conducted business for the purpose of tracking new hires' acceptance of offers and other related information, indicate that, on January 24, 2017, the individual who logged into the Welcome Portal with Ms. Bush's email address and password viewed Ms. Bush's offer letter, selected the "I Accept" button on the offer letter, and, at 11:29 p.m., typed the name "Prestine Bush" to electronically sign the offer. Attachment C is the PDF version of Ms. Bush's offer letter that was automatically saved and stored in the Welcome Portal after it was electronically signed (after Ms. Bush completed her onboarding process via the Welcome Portal, the PDF was transferred and permanently stored in Comcast's document retention system). The final page of the offer letter shows that Ms. Bush's offer letter was signed by an individual using Ms. Bush's email account (prestineb@yahoo.com) on "January 24, 2017 23:29:13-0500." Attachment C at p. 4.

18.    Comcast's Welcome Portal records further show that someone logged into Ms. Bush's Welcome Portal account on January 24, 2017 and completed the offer letter acceptance task by clicking "save and submit" at 11:33:45 p.m. Attachment D is a screenshot of the Welcome Portal page that Ms. Bush would have seen, which shows at the very bottom that the "Review and Sign Your Offer Letter" task was completed by "Prestine Bush (prestineb@yahoo.com) – 1/24/2017 11:33:45 PM EST." It is Comcast's regular practice to generate and preserve the records that are reflected in Attachment D.

19.    Ms. Bush's name could only have been saved to the document reflected in Attachment D by a person using Ms. Bush's unique login ID and password.

20.     Ms. Bush's offer letter contained, among other provisions, an agreement to be bound by Comcast's alternative dispute resolution program, called Comcast Solutions. Attachment C at p. 3.  In full, the portion of the Offer Letter that addresses Comcast Solutions stated:

> Comcast has a dispute resolution program for its employees, known as Comcast Solutions, which provides a three-step process (facilitation, mediation and binding arbitration) for resolving a variety of workplace legal issues should there be any that arise between you and the Company during or after your employment. A brochure with information and directions on how to obtain additional information related to the program is being provided to you along with this offer letter. Please review this information carefully, as the program affects the legal rights of both you and the Company (including a waiver of the right to bring a civil action in federal or state court or before a civil judge or jury, as well as a waiver of the right to bring or participate in a class action, collective action or representative action). If you cannot locate the brochure, have any questions or need additional information regarding Comcast Solutions, please call, toll free, 855-838-4180, or email to mailto:Comcast_Solutions@cable.comcast.com. By accepting this offer of employment with the Company and signing below, you acknowledge that you understand the terms of the Comcast Solutions program and also acknowledge that both you and the Company agree to participate in and be bound by the terms of the Comcast Solutions program.

21.     As noted in Ms. Bush's offer letter, below the link to the offer letter on the Portal was a notice that "[w]ithin your Offer Letter, you will find details about our Comcast Solutions program.  To learn more about the program, please click the link below to download and save a copy of the brochure for your records." See Attachment D.

22.     Attachment E is a copy of the Comcast Solutions brochure that was available to Ms. Bush through the link below the offer letter on the Welcome Portal.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on November 15, 2019

Lindsay Hinkle

# Attachment A

| NoteID | Date | IpAddr | Author | Item | Message | Source |
|---|---|---|---|---|---|---|
| 829179 | 1/25/2017 13:03 | 207.106.75.242 | Prestine Bush | Event:New Hire Onboarding Task: Complete Your Form I-9 Section 1 | The task was completed. | Onboarding Portal |
| 827312 | 1/24/2017 23:33 | 24.3.137.222 | Prestine Bush | Event:New Hire Onboarding | The task 'Offer Accept - Trigger for Portal Content ONLY' was added. | Onboarding Portal |
| 827311 | 1/24/2017 23:33 | 24.3.137.222 | Prestine Bush | Event:New Hire Onboarding Task: Offer Accept - Trigger for Portal Content ONLY | The task was self-completed. | Onboarding Portal |
| 827310 | 1/24/2017 23:33 | 24.3.137.222 | Prestine Bush | Event:New Hire Onboarding | The task 'Email Notification- Offer Letter Accepted by Candidate (Non Philly)' was added. | Onboarding Portal |
| 827309 | 1/24/2017 23:33 | 24.3.137.222 | Prestine Bush | Event:New Hire Onboarding Task: Email Notification- Offer Letter Accepted by Candidate (Non Phil | The task was self-completed. | Onboarding Portal |
| 827308 | 1/24/2017 23:33 | 24.3.137.222 | Prestine Bush | Event:New Hire Onboarding | The task 'Email Notification- Offer Letter Accepted by Candidate' was added. | Onboarding Portal |
| 827307 | 1/24/2017 23:33 | 24.3.137.222 | Prestine Bush | Event:New Hire Onboarding Task: Email Notification- Offer Letter Accepted by Candidate | The task was self-completed. | Onboarding Portal |
| 827306 | 1/24/2017 23:33 | 24.3.137.222 | Prestine Bush | Event:New Hire Onboarding | The task 'Offer Letter Accepted by Candidate' was added. | Onboarding Portal |
| 827305 | 1/24/2017 23:33 | 24.3.137.222 | Prestine Bush | Event:New Hire Onboarding Task: Offer Letter Accepted by Candidate | The task was self-completed. | Onboarding Portal |
| 827304 | 1/24/2017 23:33 | 24.3.137.222 | Prestine Bush | Event:New Hire Onboarding Task: Review and Sign Your Offer Letter | The task was completed. | Onboarding Portal |
| 824083 | 1/24/2017 11:29 | 69.241.64.18 | Colleen Condran | Event:New Hire Onboarding Task: Email Notification- Offer Letter Issued to Candidate | The task was self-completed. | Onboarding Portal |
| 824082 | 1/24/2017 11:29 | 69.241.64.18 | Colleen Condran | Event:New Hire Onboarding Task: Offer Letter Hourly External Regular - QA | The task was completed. | Onboarding Portal |
| 824078 | 1/24/2017 11:29 | 69.241.64.18 | Colleen Condran | Event:New Hire Onboarding Task: Offer Details Review | The task was completed. | Onboarding Portal |

# Attachment B

**From:**
**Sent:**
**To:**
**Subject:**                              First TIme Login/Offer Letter Available Template

Template:

Hello [$ASSIGNEE_FIRST_NAME$],

We are excited to offer you the position of [$EP_Position$], and look forward to you joining the Comcast family!

Please click the link to [$TASK_LINK$].

You will be prompted to enter the username listed below.

**Username:** [$FOR_WHOM_EMAIL$]

**Temporary Password:** [$EP_Temp_Password$]

Upon your initial login you will be prompted to set up your own unique password.

If you have any questions or need to further discuss your offer, please contact your lead recruiter, [$LEAD_RECRUITER_NAME$], at [$LEAD_RECRUITER_EMAIL$].

We look forward to you joining the Comcast family!

Thank you.


This email was auto-generated. However, should you have any questions or need any assistance, please contact your Lead Recruiter.


Requisition ID: [$EP_Req_ID$]

# Attachment C

# Congratulations!
## Offer Letter



01/24/2017

Prestine Bush
118 Tecumseh Street
Pittsburgh   PA          15207

Dear   Prestine          :

I am pleased to extend an offer to you to join Comcast in the role of  CE1, CUST EX  .

We are excited about the prospect of you joining our Company and believe that your skills and experience will enable you to fit nicely with our team. In your new role, you will report directly to me and will be based at our  Pittsburgh          office. As discussed, I anticipate your start date to be  01/30/2017          .

<img align="center"
src="/map_images/main/RedCarpet/FormTemplates/Comcast_Offer_Letter_Hourly_External_Regular/New_Offe
r_Letterhead.png" border="0">

January 24, 2017

Prestine Bush
118 Tecumseh Street
Pittsburgh, PA  15207

Dear Prestine:

I am pleased to extend an offer to you to join Comcast in the role of CE1, CUST EXP REP (PRIORITY).

We are excited about the prospect of you joining our Company and believe that your skills and experience will enable you to fit nicely with our team. In your new role, you will report directly to me and will be based at our Pittsburgh office. As discussed, I anticipate your start date to be January 30, 2017.

Your starting hourly rate for this non-exempt position will be $14.00/hour, less applicable taxes and withholdings. Wages generally are reviewed in connection with the performance review process. You will be eligible for your firs performance/merit review in March 2018, for calendar year 2017.

You will be eligible for a performance bonus for calendar year 2017, based on a target bonus amount 5% of your eligible earnings, with the payout calculated based on achievement against Company-defined goals, per the terms of the applicable plan.

**BENEFITS**

We are pleased to offer you a comprehensive benefits package, which includes health and group benefits as well as a very attractive 401(k) match. More detailed information about your benefits and how to enroll will be sent to your home in the coming weeks. Most benefits will become effective on your 91st day of employment.

If you are planning to add dependents to your health care coverage, you will be required to provide documentation in order to verify your relationship with the covered dependents, in accordance with applicable law. Required documentation may include marriage certificate, birth certificate, prior-year federal tax return, or other types of documents that verify the eligibility of your dependent(s). You may want to start gathering relevant documents, if they are not currently available. The Dependent Verification Center will follow up with you as necessary to complete the process.

**401(k)**

Comcast offers a 401(k) Plan that allows you to contribute from 1% to 50% of your eligible pay to a traditional, pre-tax 401(k) option, a Roth 401(k) option (after-tax), or a combination of the two. To help you achieve your retirement goals, after 90 days of service, you will be automatically enrolled in the traditional, pre-tax 401(k) option at a rate of 3% of your pay, unless you have previously selected a different percentage. You also can opt out of participation and/or sign up for Roth 401(k) contributions by submitting an election prior to your 90th day of service (elections may be made after 60 days). The Plan also offers an Annual Increase Program, where, if you remain automatically enrolled at 3%, your contributions will increase by 1% each year up to a maximum of 10% unless you take action.

Under the current retirement plan provisions, the Company will match up to 100% of the first 4.5% you contribute, subject to certain 401(k) plan caps. If you do not make an election from the Plan's available investment funds, both your contributions (pre- or post-tax Roth) and the Comcast Company matching contributions will be invested in the Vanguard Target Retirement Trust Select Fund that is most appropriate based on your age. Information on the Plan, including details on the Plan's investment options, will be sent to you at your home by Fidelity Investments, our Plan's Administrative Service Provider, on or around your 60th day of employment.

**EMPLOYEE STOCK PURCHASE PLAN**

You also will receive information on the Employee Stock Purchase Plan (ESPP), which offers the opportunity to purchase shares of Comcast stock at a 15% discount, subject to certain holding and other restrictions. You will be eligible to enroll in this Plan during the quarterly enrollment period following the completion of 90 days of employment (1 year if you are a part-time employee working less than 20 hours).

**FINANCIAL SERVICES**

You will also be eligible for financial services, such as financial counseling provided by AYCO at no cost to you, and investment guidance within your 401(k) plan provided by Financial Engines (online advice is at no cost to you, or there is a fee based managed account service available).

The Company continuously reviews its compensation and benefits programs in an effort to address business needs. As a result, there may be modifications from time to time to the Company's compensation and benefits programs. In the event changes are made, you will be notified in accordance with the Company's policies and procedures.

**PRE-EMPLOYMENT REQUIREMENTS**

As a condition of employment, you will be required to satisfactorily complete a pre-employment drug screening test, as well as a background check. Please note you will receive an email regarding the drug screen directly from our partner, eScreen. Upon notification from eScreen you will have two business days to complete the test. Also, a separate notification will be emailed directly from our background check partner, CARCO. Again, you will have two business days to complete the required information for CARCO to perform the background check.

**COMCAST SOLUTIONS**

Comcast has a dispute resolution program for its employees, known as Comcast Solutions, which provides a three-step process (facilitation, mediation and binding arbitration) for resolving a variety of workplace legal issues should there be any that arise between you and the Company during or after your employment.  A brochure with information and directions on how to obtain additional information related to the program is being provided to you along with this offer letter.  Please review this information carefully, as the program affects the legal rights of both you and the Company (including a waiver of the right to bring a civil action in federal or state court or before a civil judge or jury, as well as a waiver of the right to bring or participate in a class action, collective action or representative action).  If you cannot locate the brochure, have any questions or need additional information regarding Comcast Solutions, please call, toll free, 855-838-4180, or email to Comcast_Solutions@cable.comcast.com.  By accepting this offer of employment with the Company and signing below, you acknowledge that you understand the terms of the Comcast Solutions program and also acknowledge that both you and the Company agree to participate in and be bound by the terms of the Comcast Solutions program.

It should be noted that the above description of your wage, job title, and benefits information in this letter is not intended to create a contract for a specific term of employment; your employment with Comcast is at-will, which means that either party may terminate the employment relationship at any time, for any reason not prohibited by law.  Nothing in this offer letter (or in any prior written or oral communications between you and the Company), with the exception of the Comcast Solutions obligations set forth above, is intended to create a legally enforceable agreement or promise.

It should be noted that the above description of your wage, job title, benefits and other information in this letter is not intended to create a contract for a specific term of employment or any other legally enforceable agreement or promise, and that your employment with Comcast is at will, subject to the terms of the applicable collective bargaining agreement.  Further, any oral or written promises or commitments made during the pre-hire process are not valid unless contained in this offer letter.

Finally, you represent that your employment with Comcast does not breach, or otherwise violate or contravene, the terms of any employment or other agreement or policy to which you are a party or otherwise bound, such as a non-compete agreement with a current or previous employer. You understand and acknowledge that any misrepresentation by you during the prehire process or thereafter may result in the rescission of this offer or termination of employment, or other appropriate action.

If you are in agreement with the terms contained herein, please electronically sign your name, select "I Accept", and then click "Save and Complete" below letter no later than 2017-01-26     . If you have any questions regarding the offer letter, you may contact  Jason Pagano        at  JASON_PAGANO@CAI .

I look forward to your acceptance and to working with you in a very exciting and challenging environment.

Sincerely,

On Behalf of  Amy Liguori-Beeler

⊙  I Accept

○  I Decline

**ADDITIONAL OFFER DETAILS:**

Accepted:  Prestine Bush (Electronically Signed)

       Prestine Bush

Date:  01/24/2017

REQ ID:  148944

prestineb@yahoo.com [January 24, 2017 23:29:13-0500],

# Attachment D



# Attachment E



**COMCAST SOLUTIONS**

A channel
for effectively
resolving
workplace
legal issues



# Introducing Comcast Solutions

Comcast is committed to creating a positive and productive work environment for everyone—where, true to our Credo, we act with the highest standards of honesty, fairness, integrity and respect for one another.

Comcast provides a number of avenues for addressing workplace issues—through our Open Door policy and Comcast Listens channels. These include speaking with your supervisor, human resources, another local leader, a Comcast Listens representative, or by contacting the hotline or web portal.

While most concerns can be resolved quickly and effectively through these channels, occasionally legal issues arise that are better suited for a more formal dispute resolution process. To address concerns of a legal nature affecting your employment, Comcast provides an additional resource for you called Comcast Solutions.

**COMCAST SOLUTIONS**

# Three steps to resolve workplace legal issues

Comcast Solutions is a three-tiered program that is designed to address many types of workplace legal disputes that would otherwise be heard in a court of law. Examples of the types of claims that Comcast Solutions is designed to address include claims for back pay, commissions or failure to pay overtime, claims for discrimination based on race, gender, age, religion, disability or any other protected class, and claims for sexual or other types of unlawful harassment.

Comcast Solutions offers three steps for resolving these types of claims:

**1  Review/Facilitation**

which involves an internal review of the claim at the Corporate Headquarters or Divisional level

**2  Mediation**

which involves a formal settlement/mediation conference with a neutral outside, professional mediator

**3  Binding Arbitration**

which involves a formal arbitration hearing that proceeds in many ways like a trial, where witnesses and evidence may be presented before a neutral outside, professional arbitrator

2

# Features of
# Comcast Solutions

Employment-related lawsuits handled through the court system are almost always disruptive, time-consuming, and costly for everyone involved. We would much rather hear about and resolve any legal issues that may arise right away—to help ensure our employees' time and company resources are used productively in ways that benefit all Comcasters. That's why we created Comcast Solutions. Here are some of the benefits that Comcast Solutions offers:

## It's fair, impartial and effective

Comcast Solutions offers you more than one opportunity to have your legal issues heard by an outside, impartial third-party—someone who is not affiliated with Comcast, who can consider your claims objectively. Professional mediators and arbitrators are often former judges, experienced attorneys or trained professionals. They are not on either side of a dispute, but act like a neutral umpire between the parties.

In the first two steps of the Comcast Solutions process—Review/Facilitation and Mediation—you decide whether to accept the outcome at that phase or move on to the next one. In the final step, an arbitrator will have the authority to award full damages, attorney's fees and other types of relief. Both the company and you will be bound by the arbitrator's final decision.

## It's less expensive

There are no filing fees (or other charges) to you under Steps 1 and 2 of the Comcast Solutions process, as there would be if you filed a case in a court of law. If your legal claim proceeds to Step 3 arbitration, you pay only a small portion of the total arbitration fee ($150), which is reimbursed back to you if you are successful in any of your claims. Importantly, at the arbitration phase, Comcast will pay up to $1500 to cover the cost of your attorney's fees (which payment you will receive even if you are ultimately unsuccessful on your claims, provided the arbitrator does not determine that your claims were frivolous). You also may be able to receive payment for all of your attorney's fees, depending

on the outcome of the case and the decision by the arbitrator. In addition, Comcast employees who have to miss work at Comcast to attend a mediation or arbitration under the program will be eligible to receive pay for the days spent at the mediation or arbitration, at their regular (or ABBR) pay rate, without using up their paid time off.

### It's faster

Cases that are brought in a court of law sometimes can take years to reach a final resolution, especially if there are extensive motions or lengthy appeals. There are timing guidelines at each step of the Comcast Solutions process to provide parties with adequate time to exchange information and obtain discovery, but also to ensure that you obtain the relief you are seeking in a timely fashion.

### It encourages an early, cooperative resolution

Cases that are filed in court often ultimately end up being resolved by a settlement between the parties, sometimes after months or years of motion filings and expensive litigation practice. Comcast Solutions moves communications about possible settlement/resolution to early in the process, potentially saving you and the company time, expense, and attorney's fees.

### It's confidential

Court cases are generally public in nature—something that your neighbors, friends and others can read about. Claims brought under the Comcast Solutions program will be kept confidential by the company and the dispute resolution organization handling the claims, to the extent practicable, given the need to review and mediate/arbitrate the claims. This means that Comcast will involve only those with a business need to know.

### It's covered by the company's anti-retaliation policy

Comcast strongly prohibits retaliation against any employee who brings a claim under the Comcast Solutions program.

4

# You choose how to proceed

There are two options for raising workplace legal issues:
• Start with **Comcast Listens**, or
• Go straight to **Step 1 of Comcast Solutions**.

## COMCAST LISTENS

**Any** workplace or integrity issue (including non-legal issues)
• Can be anonymous
• Certain integrity issues <u>must</u> be reported

## Open Door/Comcast Listens

You can raise any workplace or integrity issue to:

**1. your supervisor, local manager, or HR;**
**2. your Comcast Listens representative; or**
**3. through the Comcast Listens helpline or web portal.**

**INTERNAL RESOURCE**

Claims raised through the Comcast Listens helpline/website can be made on an anonymous basis. All claims raised will be promptly investigated internally and, where appropriate, action will be taken.

# COMCAST SOLUTIONS

Claims of a **legal** nature affecting your employment
- Not anonymous
- You can be represented by an attorney, if you prefer

 ## Review/Facilitation

Your claim will be reviewed by a Comcast Solutions Lead to determine if it is a covered legal claim. If it is, the Comcast Solutions Lead will work with both you and company representatives in an attempt to work out a mutually satisfactory resolution to the issue. If you are not satisfied with the proposed resolution, you can decide to proceed to the next step.

**INTERNAL RESOURCE**

 ## Mediation

If your issue is not resolved through review/facilitation, you may request that the claim proceed to a professional, external dispute resolution organization for mediation. A mediation/settlement conference will be held in an attempt to reach a mutually satisfactory resolution. It is not required, but you may bring an attorney at your own cost. If you are not satisfied with the mediation result, you can decide to proceed to the next step.

**EXTERNAL RESOURCES**
Dispute Resolution Organization

 ## Arbitration

If mediation is unsuccessful, you may request an arbitration hearing on your claims, similar to a court proceeding, but decided by an independent arbitrator who is approved by the American Arbitration Association or JAMS,[1] and is not an employee of Comcast. Again, you can be represented by an attorney at this phase (and Comcast will give you up to $1500 towards attorney's fees). The arbitrator will review evidence and listen to witnesses before rendering an opinion, which will be final and binding on you and on the company.

[1] JAMS stands for the Judicial Arbitration and Mediation Services organization.



# Important information
# about Comcast Solutions

By accepting employment with Comcast, you are agreeing that you and the company will be bound by the Comcast Solutions program for covered legal claims. Upon returning your signed offer to the company, you will be automatically enrolled in Comcast Solutions.

We strongly urge you to read the Comcast Solutions Guide, DRO rules and FAQs to ensure you fully understand the Comcast Solutions program prior to accepting employment with the company.

If you have any questions regarding the scope or effect of the Comcast Solutions program (including any questions prior to deciding to accept an offer of employment), you may submit them by:

• email to Comcast_Solutions@cable.comcast.com,

• regular mail to Comcast Solutions Administrator, c/o Comcast,
  1701 JFK Blvd, 34th Floor, Philadelphia, PA 19103, or

• phone (toll free) to 855-838-4180.

You may also visit the DRO websites located at **www.jamsadr.com** and **www.adr.org** for more information on mediation and arbitration.

> **To participate in the Comcast Solutions program, both you and the company waive the right to a civil action or a jury trial for any covered claims. You also waive the right to bring or participate in a class action or in a collective or representative action on covered legal claims, to the fullest extent permitted by law. All covered legal claims will be handled through the three-step Comcast Solutions process; both you and the company will be bound by the final decision of the arbitrator.**

Comcast cares about you—and any time you have a problem at work, it matters. You deserve respect, attention, and a clear, neutral process to help resolve your problems—quickly and fairly. Comcast Solutions is here to do just that.



### Q: What is the difference between Comcast Listens and Comcast Solutions?

**A:** Comcast Listens is available for all kinds of workplace or integrity issues, big or small, legal and non-legal. Comcast Solutions is only for certain claims of a legal nature affecting your employment, such as allegations of unlawful discrimination or harassment based on a protected category, wage and hour claims, compensation claims, FMLA and other leave of absence claims.

### Q: Will all legal claims be covered by Comcast Solutions?

**A:** No. Certain kinds of legal claims, including claims for worker's compensation benefits, unemployment compensation benefits, claims brought under the Employee Retirement Income Security Act ("ERISA") for a company-sponsored benefit plan, claims under the National Labor Relations Act ("NLRA") and claims excluded from mandatory arbitration by law will **not** be handled through Comcast Solutions.

### Q: What happens if I submit a claim to Comcast Solutions that is not eligible for the program?

**A:** If you raise an issue that is **not** a legal claim or is an excluded legal claim (such as a claim for worker's compensation benefits), you will be informed of this—and directed to raise the claim in an appropriate forum. You also will be given the chance to amend your Comcast Solutions claim to state a covered legal claim, if applicable. Certain claims that are not legal in nature may be referred, after discussion with you, to the Comcast Listens Program for resolution, if appropriate.

### Q: By participating in Comcast Solutions, do I waive my right to go to the EEOC, NLRB, other federal/state/local agencies, and/or to court?

**A:** Comcast Solutions does not affect your right to go to the EEOC, NLRB or any federal, state or local agency. You will still be able to do so. By participating in Comcast Solutions, however, both you and the company are waiving the right to have covered legal claims heard by a judge or jury in a court of law or equity.

### Q: What is the difference between Mediation and Arbitration?

**A:** Mediation is a process where an external, professional mediator tries to get both sides of a dispute (in this case, an employee and the company) to reach a mutually acceptable resolution to the claims. The mediator does this by reviewing the facts and talking to both sides, together and separately, to reach a solution. Arbitration, in contrast, is like a mini-trial. An external, professional arbitrator acts as a judge and listens to evidence presented by both sides, including witness testimony, before making a final decision. "Binding" arbitration means both you and the company are bound by the arbitrator's decision.

**Q: What is the Dispute Resolution Organization (DRO)?**
**A:** A DRO is an outside independent entity that offers mediation and arbitration services to help resolve disputes outside of the court system. Comcast utilizes the American Arbitration Association (AAA) and Judicial Arbitration and Mediation Services (JAMS), both well-known DROs, as part of the Comcast Solutions program. Employees working in California, Colorado, Connecticut, Delaware, Florida, Georgia, Illinois, Maryland, Massachusetts, Minnesota, New Hampshire, New Jersey, New York, Pennsylvania, Rhode Island, Vermont, Virginia and Washington will be covered by JAMS; all others will be covered by AAA. You are encouraged to learn more about these DROs by contacting the Comcast Solutions team or reviewing the DRO websites.

**Q: Do I have to go through Comcast Listens before filing a claim with Comcast Solutions?**
**A:** No. While we strongly encourage participation in our open door/Comcast Listens process, this is not a required first step.

**Q: Do I have to have an attorney to participate in Comcast Solutions?**
**A:** No. You may have an attorney represent you throughout the Comcast Solutions process, but this is not required.

**Q: Are there time limits on when I can bring my claims?**
**A:** Yes. As in a court of law, there are time limits (or "statutes of limitations") for bringing legal claims. You should consult with a legal advisor to determine the timeliness of claims. The timeliness of your claim will be determined by the date it is first submitted to the Comcast Solutions team.

**Q: How do I get copies of Comcast Solutions materials?**
**A:** You can get them by contacting the Comcast Solutions Administrator at Comcast_Solutions@cable.comcast.com or toll-free at 855-838-4180.

# Where can I get more information?

1   Speak to a Comcast Solutions representative (toll-free) at **855-838-4180**.

2   Email the Comcast Solutions team with questions, at **Comcast_Solutions@cable.comcast.com**.



COM398-121014